FARM BUREAU POLICY HOLDERS and Members, Dennis Lee, Representative *v.* FARM BUREAU MUTUAL INSURANCE COMPANY of Arkansas, Inc., and Southern Farm Bureau Casualty Insurance Company

97-1028                                                984 S.W.2d 6

Supreme Court of Arkansas
Opinion delivered December 3, 1998

[Petition for rehearing denied January 14, 1999.*]

---

* GLAZE, CORBIN, IMBER, THORNTON, and SMITH, JJ., not participating.

*Gibson Law Office*, by: *Charles S. Gibson* and *C.S. "Chuck" Gibson II*, for appellant.

*Friday, Eldredge & Clark*, by: *Robert S. Shafer* and *William A. Waddell, Jr.*, for appellee Farm Bureau Mutual Insurance Company of Arkansas, Inc.

*Laser, Wilson, Bufford & Watts, P.A.*, by: *Sam Laser* and *Brian A. Brown*, for appellee Southern Farm Bureau Insurance Company.

Robert L. Brown, Justice. This appeal arises out of a class–action lawsuit brought by appellant Dennis Lee as class representative for Farm Bureau policyholders and members. The appellees, Farm Bureau Mutual Insurance Company of Arkansas, Inc. (FBM), and Southern Farm Bureau Casualty Insurance Company (SFB), are carriers for automobile insurance and were the defendants in the lawsuit. The class was certified by the trial court in 1994 pursuant to Ark. R. Civ. P. 23 and consisted of all current and past automobile policyholders (since January 25, 1989), who had paid Farm Bureau membership dues. We affirmed the certification. *See Farm Bureau Mut. Ins. Co. of Arkansas, Inc. v. Farm Bureau Policy Holders*, 323 Ark. 706, 918 S.W.2d 129 (1996). After a seven–day trial, the chancery judge entered judgment in favor of the automobile carriers. Lee now raises 13 points for reversal. We affirm the decree of the chancery judge.

On January 25, 1994, Dennis Lee filed a class–action lawsuit against the two auto carriers, FBM and SFB. In his complaint, Lee alleged that the two carriers wrongfully collected amounts in excess of the stated premium from their auto policyholders. Specifically, he alleged that the collection of county Farm Bureau membership dues constituted a breach of contract, fraud, and unjust enrichment.

It is important at the outset to describe the Farm Bureau structure. Each county in Arkansas has a county Farm Bureau organization. The 76 county Farm Bureaus are affiliated with the Arkansas Farm Bureau Federation, which is affiliated with the American Farm Bureau. Over the years, county Farm Bureaus in Arkansas have offered their members automobile insurance through two carriers, FBM and SFB. FBM has interlocking board members with the board of directors of the Arkansas Farm Bureau Federation. SFB has three board members in common with the Federation, and the Federation owns 20 percent of the stock of SFB through a subsidiary. According to FBM and SFB bylaws, these two auto carriers may only sell insurance to members of county Farm Bureaus. Before 1993, both insurance companies would cancel their auto policies during the term of the insurance when an insured failed to maintain county Farm Bureau membership. This practice was discontinued, and after 1993, when

county Farm Bureau memberships lapsed, policies were non-renewed only at the end of the policy period.

Turning to the facts of this case, Lee became a Farm Bureau member in 1988 when he approached a local FBM and SFB agent, Melvin Hicks, seeking auto insurance coverage. Hicks quoted rates for the auto insurance and told Lee that he would have to join the county Farm Bureau in order to be eligible for insurance with the company. Lee orally agreed to become a county Farm Bureau member, and Hicks completed a membership application for him, which did not require Lee's signature. Lee gave Hicks a check for $35, which was the amount of the membership dues. Lee then completed the auto insurance application, signed it, and paid the premium owing with a separate check. Hicks sent the insurance application to the company's Little Rock office to be processed. After Lee's application was accepted, he received a declaration sheet stating that the company insuring him was appellee, SFB. The actual policy of insurance showed both SFB and FBM as the carriers, but Lee never received the policy. Each year thereafter, Lee received a Farm Bureau membership notice from the county Farm Bureau. Farm Bureau membership terms, including Lee's, commenced on November 1 and ended on October 31 of each year. The carrier's records show that Lee paid his membership dues each year by a check separate and apart from his insurance premium payments.

On May 11, 1992, Lee requested that his auto policy be canceled because he no longer had a car. He continued to pay his county Farm Bureau membership dues and also continued to maintain a health insurance policy through Farm Bureau. Lee reinstated his auto policy on April 2, 1993, and on January 17, 1994, he was notified that payment of his county Farm Bureau dues was necessary in order to continue his insurance coverage. Lee did not pay the membership dues.

On January 25, 1994, Lee filed this class-action lawsuit with the class comprised of over 180,000 past and present policyholders (since January 25, 1989) of either SFB or FBM or both. The remedy sought was a constructive trust for all dues wrongfully collected from the class for this period of time. On February 11,

1994, Lee was notified that his auto coverage would not be renewed unless he paid the county Farm Bureau membership dues. Lee then paid his insurance premium, and his auto policy was renewed without an active membership in the county Farm Bureau because the person renewing the policy did not verify whether his county Farm Bureau membership was current. On October 2, 1994, Lee's auto policy was non-renewed due to failure to pay county membership dues.

After the seven-day trial, the chancery judge ruled that Lee failed in his proof; that membership dues were not a premium required to be stated in the policies; that Lee waived his claim because he knew or should have known that dues were for a Farm Bureau membership; that insurance agents or anyone connected with FBM and SFB had not committed fraud; that Lee had orally contracted to join the county Farm Bureau and to pay membership dues; that the membership-dues obligation was a prerequisite and not a condition of insurance coverage; and that because Lee's claim had failed, the class's claims should be dismissed with prejudice.

## I. Membership Dues

Lee raises three points on appeal that involve the county Farm Bureau membership dues: (1) whether the dues were a condition of insurance rather than a prerequisite; (2) whether the membership transaction was a legitimate oral contract between the agents and insureds; and (3) whether collection of the dues constituted a breach of the insurance contract.

Several statutes are pertinent to these inquiries. The first defines "premium," as the term is used in the Insurance Code: "Premium is the consideration for insurance, by whatever name called. Any assessment, or any membership, policy, survey, inspection, service, or similar fee or charge in consideration for an insurance contract is deemed part of the premium." Ark. Code Ann. § 23-79-101(2) (Repl. 1992).

A second statute, Ark. Code Ann. § 23-79-112(b)(5) & (8) (Repl. 1992), sets out the information that must be contained in

an insurance policy, including the premium amount and all conditions "pertaining to the insurance." A third statute states:

> (a) No person shall willfully collect any sum as premium or charge for insurance, which insurance is not then provided or is not in due course to be provided, subject to acceptance of the risk by the insurer, by an insurance policy issued by an insurer as authorized by this code.
>
> (b)(1) No person shall willfully collect as premium or charge for insurance any sum in excess of the premium or charge applicable to such insurance in accordance with the applicable classifications and rates as filed and approved if necessary by the commissioner; . . .
>
> . . . .
>
> (5) [This provision shall not be deemed to prohibit] the collection of membership dues by a property and casualty agent when membership of the applicant in an organization is a prerequisite of the insurer to the issuance of coverage.

Ark. Code Ann. § 23-66-310(a) & (b)(1) & (5) (Repl. 1994).

Lee, as a result, argues that the chancery judge should have concluded that § 23-79-112(b)(8) mandates that the membership-dues requirement be stated in the policy as a condition "pertaining to the insurance" and that subsection (5) of the same statute requires that policies specify the dues as part of the "premium." He contends that the chancery judge erred when he found that the $35 dues obligation is not required to be set forth in the insurance policy because it is not a premium or a condition of insurance. Lee further contends that the auto carriers' practice of enforcing payment of membership dues during the term of active insurance policies converts payment of the dues from a prerequisite for coverage to a condition of maintaining coverage. Thus, according to Lee, that condition had to be stated in the policy.

Lee further urges that this court follow a decision by the Louisiana Court of Appeals which held that membership fees charged by State Farm Mutual Automobile Insurance Company were premiums and were required to be disclosed in the insurance policy. *See State Farm Mut. Auto Ins. Co. v. Louisiana Ins. Rating Comm'n*, 79 So.2d 888 (La. 1955). In that case, Louisiana had a

statute similar to ours in Arkansas which specified that a membership fee is a premium if charged and received as consideration for the insurance. The Louisiana appellate court said, in concluding that the membership fee paid to State Farm was part of the premium:

> It is a play on words to state that the policyholder pays this membership fee for the purpose of applying for insurance and not for the purpose of obtaining the insurance. The same amount of money leaves his pocket (the membership fee and the initial premium are collected simultaneously, according to the record before the Commission) with the same identical purpose as when paid to other companies, and is used identically by State Farm as by other companies.

*State Farm*, 79 So.2d at 895.

The auto carriers counter that county Farm Bureau membership is clearly a "prerequisite of the insurer to the issuance of coverage" within the meaning of § 23-66-310(b)(5) and that the practice of collecting county Farm Bureau membership dues as a separate transaction at the time a person applies for Farm Bureau insurance is appropriate. They, in addition, note that if a first-time insurance applicant is rejected for coverage, that person's membership dues are not automatically refunded because that person may choose to remain a county Farm Bureau member if he or she desires. With regard to Lee's argument about the collection of membership dues during the active term of membership, the auto carriers contend that this practice only reinforces their position that Farm Bureau membership is a true prerequisite within the meaning of the statute, with the payment of dues being a first step to both the initiation of a Farm Bureau insurance policy and to any renewal of the policy. With regard to *State Farm Mut. Auto Ins. Co. v. Louisiana Ins. Rating Comm'n, supra,* they emphasize that the membership fees in that case were paid directly to State Farm to participate in the mutual insurance company.

We agree with the auto carriers and with the chancery judge's finding that the membership fee in the instant case was a prerequisite and not a condition of insurance or a part of the premium. First, with respect to the *State Farm* case, the membership fee charged by State Farm went directly to the insurance company

and was used in part to pay the operating expenses of the company. Here, on the other hand, membership dues charged by the county Farm Bureaus and paid by the members are divided as follows: 45% to the county Farm Bureau, 45% to the Farm Bureau Federation, and 10% to the national organization. There was no testimony at trial that any portion of the membership dues went to the auto carriers. Indeed, the testimony was to the effect that the membership dues were reflected in the income of the Arkansas Farm Bureau Federation.

Furthermore, the structure of State Farm and the structure of Farm Bureau and its auto carriers vastly differ. State Farm does not have separate county agencies that represent interests apart from the insurance area. State Farm is primarily in the business of selling insurance. County Farm Bureaus, however, are not in the business of selling insurance. The stated purposes of Farm Bureau, as set out in its membership handbook, are:

> Farm Bureau was and is organized to unite farm and ranch families for the purpose of identifying, analyzing and solving problems. Therefore, it is only limited in what it can and should do by what its members want and are willing to do through it.

> Farm Bureau is a farmer's organization – financed by annual dues and run BY farmers FOR farmers.

> The overall objective of Farm Bureau is to improve net farm income.

Finally, persons joining county Farm Bureaus are joining the county farm organization, while persons joining State Farm are joining a mutual insurance company.

The *State Farm* case can be further distinguished by examining how State Farm planned to use the membership fee. In that case, State Farm intended to advertise a reduction in rates after instituting the membership fee. In an effort to protect the public from this misleading practice, the Insurance Commission said:

> The company has already demonstrated how it would take advantage of the so-called "membership fee" if it were granted, and the commission finds that applicant should not be allowed to advertise a 25% reduction in premiums while actually employing

a unique play on words to designate a part of the premium as a "membership fee."

*State Farm*, 79 So.2d at 894.

In the instant case, we find it telling that membership in a county Farm Bureau entitles that member to benefits apart from simply receiving auto insurance. A membership packet that was introduced at trial shows those benefits to include receipt of a Farm Bureau publication, free accidental death insurance on the member's entire family, estate planning clinics, the Southern Farm Bureau Cash Fund for investments, health insurance available through a special Blue Cross-Blue Shield plan, marketing advice systems to help farmers market commodities, a child safety car-seat program, and a $500 reward program to anyone furnishing information leading to the arrest and conviction of persons stealing, destroying or harming property on the farm or residential premises of members.

We are mindful that the county Farm Bureaus essentially benefit members who are farmers. Moreover, it would be disingenuous not to admit that for non-farmers the availability of auto insurance at a competitive cost is a primary reason for joining the Farm Bureau organization. Yet, the point is that a Farm Bureau membership is not a mere charade for non-farmers but does provide tangible benefits.

■ We hold that the chancery judge was correct in finding that the membership dues were not a premium. The chancery judge, moreover, was also correct in concluding that membership in the county Farm Bureau was an annual prerequisite for determining eligibility for coverage and not a condition of insurance.

■ We further agree that the oral contracts for Farm Bureau membership were between the county Farm Bureaus and their members, and not between the auto carriers and the insureds. Under these circumstances, there could be no merger of the oral membership contracts into the insurance contract as they were separate agreements. "Merger refers to the absorption of one contract into another subsequent contract and is largely a matter of intention of the parties . . . . Merger happens when the *same* parties to an earlier agreement later enter into a written inte-

grated agreement covering the *same* subject matter." *Fish v. Tandy Corp.*, 948 S.W.2d 886, 898 (Tex. App.—Fort Worth 1997). In the instant case, the oral membership contract was between Lee and the county Farm Bureau. The auto insurance contract, on the other hand, was between Lee and the auto carrier. Hence, merger cannot apply because the same parties and the same subject matter are not involved. Further, absent merger of both contracts into one contract, the parol evidence rule will not apply. *See Fish*, 948 S.W.2d at 899.

■ In sum, there was no breach of contract resulting from the Farm Bureau membership agreements. We affirm the chancery judge on these points.

## *II. Endorsement X*

Lee next claims that Endorsement X to his auto policy clearly imposed a dues obligation on him. The dues, he contends, were in the nature of a condition of insurance which violated Ark. Code Ann. § 23-79-112(b)(8).

Endorsement X reads:

> As a condition precedent to your purchase of this policy and your maintenance of insurance hereunder, you must make application to be a member of and maintain your membership in the applicable local county Farm Bureau agricultural organization and affiliated state Farm Bureau agricultural organization (hereinafter collectively "Farm Bureau Federation"). Your failure to apply for membership and maintain your membership with the applicable Farm Bureau Federation as our sponsoring organization, including but not limited to your failure to pay the required membership dues to said Farm Bureau Federation, shall require the cancellation or non-renewal of your policy by us. Dues payable to Farm Bureau Federation are in consideration of membership in Farm Bureau Federation and other agriculture related services from Farm Bureau Federation and are not premiums, are not consideration of coverage under this policy, and are not payable to us.

■ This issue appears to be essentially the same issue raised under Point I, albeit dressed in different clothing. But, in addition, the relevancy of Endorsement X to the instant case is highly

questionable in that the endorsement was added to Lee's auto policy after his lawsuit was filed. Members of the class were those Farm Bureau members who purchased auto insurance between January 25, 1989, and January 25, 1994 — the date the class-action complaint was filed. Changes in insurance policies made after the litigation was commenced would seem to have no bearing on the class as defined.

Lee's contention regarding Endorsement X has no merit.

### III.   Contract with FBM

For his next point, Lee urges that the trial judge clearly erred in finding that FBM had not issued any policies of insurance to class members and, therefore, could not be subject to Lee's claims. The foundation for Lee's argument is that even though the Declaration Sheet showed SFB as the sole auto carrier, the heading of the policy itself shows FBM as well as SFB as the carriers, and the definition section of the policy states: "[t]he words 'we,' 'us,' 'our,' and 'the company' mean FBM."

■ ■   Our standard of review for a finding of fact by a trial judge is whether that finding is clearly against the preponderance of the evidence. Ark. R. Civ. P. 52(a). On this point, we cannot say the trial judge clearly erred. The facts supporting the trial judge's finding are considerable. First, the declaration sheet issued to Lee showed that the coverage was through SFB and not FBM. Lee further testified that all subsequent declaration sheets he received showed SFB as the insurer. Second, a representative from FBM testified that FBM had not issued auto insurance in Arkansas since 1985. The FBM representative also testified that the policy definition which listed only FBM was a mistake in the policy, which stemmed from the approval of the policy as a dual policy form. Third, and perhaps most important, Lee testified that he never received the policy with the FBM language and was not aware of it. Neither Lee nor any other class member testified that they were operating under the belief that FBM was their insurer. It is difficult to give credence to the argument that FBM held itself out as Lee's insurer, when from the undisputed facts, Lee had no idea that anyone but SFB was his insurer.

We affirm the trial judge's finding.

### IV.   Amendment to Complaint — FBM Breach

Lee filed a second amended complaint on April 13, 1995, which was after class certification by the trial judge. There, he alleged a claim for breach of contract based upon the auto carriers' refusal to recognize class members as mutual company policyholders with attendant rights and benefits and prayed for an accounting of profits and premiums and a declaration of breach and damages. The trial judge granted the carriers' motion to strike Lee's second amended complaint. The judge specifically found that the additional claim of breach of contract relating to mutual company membership was not among the issues certified by the trial judge or affirmed by this court on appeal.

Lee argues that the trial judge was wrong in finding that a plaintiff must state all causes of action prior to class certification. He points out that the same facts are present that initially warranted class certification, the amendment to the complaint does not add new parties, the class notice informed all class members of both claims set out in the second amended complaint, and because of the time between the amendment and the trial, the amendment did not prejudice the auto carriers. He concludes that where it is clear that a post-certification claim does not disturb the integrity of the court's certification, the new claim should be allowed.

In making his ruling on this issue, the trial judge referred to the potential for a multiplicity of suits on the mutual-company issue but also to the lateness of the amendment to the complaint raising the new issue. What bothered the trial judge concerns us also, and that is whether amending a complaint after class certification would lead to a successive appeal to this court. We can easily see how permitting a new issue to be raised after class certification might well lead the auto carriers to file a second interlocutory appeal contesting the new issue.

From the language of the trial judge's order, it is clear that he allowed Lee to present evidence of breach of contract relating to the mutual policy, but he would reserve ruling on whether the complaint could in fact be amended. The judge's

ultimate order disallowing consideration of the issue appears to be well reasoned, and we affirm his ruling that the issues to be tried must be limited to those raised before class certification. We hold that the trial judge did not err in ruling as he did.

### V. Failure to Rule on Public Policy

A cornerstone of Lee's complaint was that offering Farm Bureau memberships to non-farmers violated statutory law and, therefore, the public policy of the State. He cites this court, in particular, to Act 116 of 1921, codified at Ark. Code Ann. § 2-2-407 (Repl. 1996), which, he asserts, limits Farm Bureau membership to those engaged in the production of agricultural products. Thus, according to Lee, the membership agreements to non-farmers were void. The trial judge, however, failed to rule on this issue, and Lee contends that this was error.

We do not reach the merits of this issue because it is procedurally barred. It is incumbent upon the appealing party to obtain a ruling on an issue in order to preserve it for our review. *Fisher v. Valco Farms*, 328 Ark. 741, 945 S.W.2d 369 (1997). The trial judge never ruled on the ultimate issue raised by Lee regarding the State's public policy, even though he did find that Act 116 was material to the question posed. We will not review an issue where the trial judge has not first decided it. *Id.*

### VI. Constructive Fraud Amendment

Lee next argues that it was error for the trial judge to refuse to permit him to amend his complaint to conform to the proof on constructive fraud. He adduces Ark. R. Civ. P. 15(b) for the proposition that issues tried by express or implied consent shall be treated as if they were raised in the pleadings. He admits that when the non-moving party objects to the amendment, it becomes an issue of trial-judge discretion. But he contends that in denying the amendment for a constructive-fraud claim, the trial judge abused his discretion.

To establish constructive fraud, a plaintiff must show: (1) a false representation of material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon

which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance. *Scollard v. Scollard*, 329 Ark. 83, 947 S.W.2d 345 (1997). Constructive fraud can exist in cases of rescission of contracts or deeds and breaches of fiduciary duties, but a plaintiff must show a material misrepresentation of fact. *Id.*

■ We agree with Lee on this point. The trial judge abused his discretion by denying the amendment to pleadings under Rule 15(b). Nevertheless, the error is harmless because we further conclude that Lee did not prevail on either a claim of fraud or constructive fraud, as discussed under the next point.

### VII. Fraud and Constructive Fraud

Lee next maintains that the auto carriers made false representations of material fact when they marketed and sold Farm Bureau memberships contrary to the statutory public policy of Arkansas because those memberships are void. *See* Ark. Code Ann. § 2-2-407 (Repl. 1992). Thus, the auto carriers, according to Lee, were guilty of either actual or constructive fraud. Further, he claims that while the agents of FBM or SFB may have been unaware that Farm Bureau memberships sold to non-farmers were void, FBM and SFB, presumably through other officers and representatives, were both cognizant of the fact that such memberships were void.

Again, Lee obtained no ruling from the trial judge on whether memberships sold to non-farmers are void as against Arkansas's public policy. But, in addition, there was no proof that the auto carriers' agent, Melvin Hicks, in any way defrauded Dennis Lee or other non-farmer insureds by failing to tell them the truth about Act 116. Indeed, the proof is to the contrary because the agents believed the memberships in the county Farm Bureaus to be valid.

■ ■ To be guilty of fraud or deceit, a false representation must be made. *Fidelity Mortgage Co. v. Cook*, 307 Ark. 496, 821 S.W.2d 39 (1991). In order to extend the tort of deceit to instances where the false representation is due to silence, this court

has stated that the false representation must include "(1) concealment of material information and (2) non-disclosure of certain pertinent information." *Id.* at 500, 821 S.W.2d at 42 (quoting *Baskin v. Collins*, 305 Ark. 137, 806 S.W.2d 3 (1991)). *American Jurisprudence* further illuminates the difference between concealment and mere silence.

> The law distinguishes between passive concealment and active concealment, or in other words, between mere silence and the suppression or concealment of a fact, the difference consisting in the fact that concealment implies a purpose or design, while the simple failure to disclose a fact does not. Mere silence is not representation, and a mere failure to volunteer information does not constitute fraud. Thus, as a general rule, to constitute fraud by concealment or suppression of the truth there must be something more than mere silence or a mere failure to disclose known facts. Where there is no obligation to speak, silence cannot be termed "suppression," and therefore is not a fraud. Either party may, therefore, be innocently silent as to matters upon which each may openly exercise his judgment.

> Silence, in order to be an actionable fraud, must relate to a material matter known to the party and which it is his legal duty to communicate to the other contracting party, whether the duty arises from a relation of trust, from confidence, for inequality of condition and knowledge, or other attendant circumstances.

37 AM. JUR. 2d *Fraud and Deceit* § 145.

Here, the contention is made that the auto carriers' agents defrauded non-farmer applicants by not revealing that Farm Bureau membership was limited under Act 116 of 1921 to those engaged in agriculture. As an initial matter, we do not concede that Lee's interpretation of Act 116 in this context is correct. But, regardless of that point, Lee presented no evidence that agents for the auto carriers were even aware that Act 116 existed, much less that they concealed or failed to disclose information about the application of the Act to non-farmer members. Nor did Lee present evidence that the auto carriers themselves were aware that the memberships might be void under Act 116. Finally, Lee presented nothing to show that the Farm Bureau Federation, if

aware of Act 116, purposefully withheld that information and accepted non-farmers as members with the knowledge that non-farmer memberships were against public policy. There is nothing in the way of proof to sustain Lee's theory of misrepresentation by concealment.

■ The facts and circumstances of this case do not support reversal on this point. This is essentially an issue of sufficiency of the evidence. When determining whether substantial evidence exists, we view the evidence in the light most favorable to the appellee. *Turner v. Stewart*, 330 Ark. 134, 952 S.W.2d 156 (1997). Substantial evidence of no fraud, either actual or constructive, exists in this case, and we affirm the trial judge.

*VIII.   Class Members with Comprehensive Coverage*

For his next point, Lee argues that the trial judge erred in concluding that class members who possessed comprehensive automobile coverage policies should be excluded from the class. The auto carriers respond that Lee was not insured under a comprehensive automobile policy and, thus, could not be a class representative for persons insured under a different policy.

■ Lee offers no reasoning or legal authority as to why the trial judge erred on this issue. We have said in the past that we will not do research for an appellant and will affirm a trial judge's decision when the appellant's argument is neither supported by legal authority nor apparent without further research. *See Hopper v. Garner*, 328 Ark. 516, 944 S.W.2d 540 (1997).

■ We fail to understand, however, how Lee as class representative can raise an issue on behalf of the class which pertains to insurance coverage that he did not have. We believe the trial judge was correct in not countenancing the claim.

*IX.   Other Issues*

Lee takes issue with the trial judge's ruling that the class claims were dependent upon proof presented by Lee, as class representative. This is a correct statement of the law.

■ Again, Lee fails to cite any legal authority to explain why the trial judge's decision constitutes reversible error. Nevertheless, Lee's claim is meritless because "[t]he right of the class to recover is contingent upon the right of action in the named plaintiff or plaintiffs who represent the class. If the action of these parties fails, then the class action fails also." 59 AM. JUR. 2d *Parties* § 60 (1987). The decision of the trial court is affirmed.

Because we affirm on the merits of this case, we need not address Lee's contention that the trial judge erred in his finding that Lee's claims were barred under the statute of limitations or that Lee waived his right to proceed with his claims because of his annual renewal of his Farm Bureau membership and SFB coverage over a period of years.

Affirmed.

Special Justice MIKE RAINWATER joins.

Special Justice DAVID ETHREDGE joins.

Special Justice PATRICIA HAYS joins.

Special Justice JACK LASSITER joins.

GLAZE, CORBIN, IMBER, and THORNTON, JJ., not participating.