FIRSTPLUS HOME LOAN OWNER 1997-1, et al. *v.*
Stacy BRYANT, et al., and Michael Bryant

07-740 277 S.W.3d 576

Supreme Court of Arkansas
Opinion delivered February 28, 2008

[Rehearing denied April 10, 2008.]

*Rose Law Firm*, by: *Garland J. Garrett* and *Kathy B. Perkins*; and *Branch Thompson Philhours & Warmath, P.A.*, by: *Robert F. Thompson*, for appellants trust defendants.

*Womack, Landis, Phelps, et al.*, by: *Paul D. McNeill* and *Mark Mayfield*; and *Kutak Rock LLP*, by: *Leslie A. Greathouse* and *Jean-Paul Assouad*, for appellant trust.

*Mark Vehik*, for appellees.

JIM HANNAH, Chief Justice. This is an appeal from an order certifying a class action. The cause of action by the representative plaintiffs, individually, and on behalf of the members of each subclass, seeks damages arising from the payment by them of interest that they allege is usurious to the trust or trusts and their trustees that own or owned their loans. The cause of action also seeks damages for fraud arising from the payment by the plaintiffs and the members of each subclass of fees to record loan documents in excess of the amounts actually paid by the originators to record the documents. The circuit court certified five subclasses with each subclass consisting of a class representative or representatives and class members who pay or have paid interest to the trust or trusts identified in the subclass that own or owned their mortgage notes. The subclasses were defined as follows:

1. (a) Arkansas residents who entered into promissory note contracts secured by second mortgages on their homes in Arkansas that were assigned to U.S. Bank, as trustee for, and owned by FirstPlus Home Loan Owner Trusts 1997-1, 1997-2, 1997-3, 1997-4, 1998-3, 1998-4, and Remodeler's Home Improvement Asset-Backed Certificate Series 1996-1;

   (b) Arkansas residents who entered into promissory note contracts secured by second mortgages on their homes in Arkansas that were assigned to U.S. Bank, as trustee for, and owned by Keystone Owner Trust 1998-P1;

   (c) Arkansas residents who entered into promissory note contracts secured by second mortgages on their homes in Arkansas that were assigned to U.S. Bank, as trustee for, and owned by Keystone Owner Trust 1998-P2;

   (d) Arkansas residents who entered into promissory note contracts secured by second mortgages on their homes in Arkansas that were assigned to U.S. Bank, as trustee for, and owned by Keystone Owner Trust 1997-P3;

   (e) Arkansas residents who entered into promissory note contracts secured by second mortgages on their homes in Arkansas that were assigned to U.S. Bank, as trustee for, and owned by United National Home Loan Owner Trust 1999-1.

2. Arkansas residents who paid fees to record mortgages and the assignment of mortgages, identified in subclasses (a) through (e), above.

Appellants are FirstPlus Home Loan Owner Trusts 1997-1, 1997-2, 1997-3, 1997-4, 1998-3, 1998-4, and the Remodeler's Series 1996-1 Trust Fund; the Keystone Owner Trusts 1997-P3, 1998-P1, and 1998-P2; Wilmington Trust Company and U.S. Bank National Association in their various capacities as Owner Trustee, Co-Owner Trustee, and Indenture Trustee ("Trust Defendants"); and United National Home Loan Owner Trust 1999-1 ("United Trust"). Appellees are Stacy Bryant, individually and on behalf of those similarly situated, and Michael Bryant; Roy Dale Moomey, individually and on behalf of those similarly situated, and Linda Moomey; Mark Petty, individually and on behalf of those similarly situated, and Elizabeth Petty; Mark Cheney, individually and on behalf of those similarly situated, and Sara Cheney; Dale Ferguson, individually and on behalf of those similarly situated, and Danielle Ferguson; Billy Lawhon, individually and on behalf of those similarly situated; Pearlie Truly, individually and on behalf of those similarly situated, and Delmore Truly; Terry Ferguson, individually and on behalf of those similarly situated, and Julie Ferguson; Stephen Davis, individually and on behalf of those similarly situated; and Joyce and Willie Turner, individually and on behalf of those similarly situated.

On appeal, the Trust Defendants and United Trust argue that the circuit court erred in certifying the underlying case as a class action. They raise several points and subpoints on appeal, each of which challenges the circuit court's conclusion that the plaintiffs met the requirements of Rule 23 of the Arkansas Rules of Civil Procedure. The gist of the appellants' arguments is that individual, threshold issues preclude class certification. Because this is an interlocutory appeal pursuant to Ark. R. App. P.–Civ. 2(a)(9), our jurisdiction is proper pursuant to Ark. Sup. Ct. R. 1-2(a)(8). We find no error and affirm.

Circuit courts are given broad discretion in matters regarding class certification, and we will not reverse a circuit court's decision to grant or deny class certification absent an abuse of discretion. *See Asbury Auto. Group, Inc. v. Palasack*, 366 Ark. 601, 237 S.W.3d 462 (2006). When reviewing a circuit court's class-certification order, this court reviews the evidence contained in the record to determine whether it supports the circuit court's

decision. *See id.* This court does not delve into the merits of the underlying claims at this stage, as the issue of whether to certify a class is not determined by whether the plaintiff has stated a cause of action for the proposed class that will prevail. *See American Abstract & Title Co. v. Rice*, 358 Ark. 1, 186 S.W.3d 705 (2004).

Rule 23 provides in relevant part:

(a) *Prerequisites to Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties and their counsel will fairly and adequately protect the interests of the class.

(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. At an early practicable time after the commencement of an action brought as a class action, the court shall determine by order whether it is to be maintained. For purposes of this subdivision, "practicable" means reasonably capable of being accomplished. An order under this section may be altered or amended at any time before the court enters final judgment. An order certifying a class action must define the class and the class claims, issues, or defenses.

Rule 23 provides the requirements for class certification. Specifically, the following six requirements must be met before a lawsuit can be certified as a class action under Rule 23: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy; (5) predominance; and (6) superiority. *See Asbury Auto. Group, supra.*

### Commonality

Rule 23(a)(2) requires the circuit court to make a determination that "there are questions of law or fact common to the class." Quoting from Professor Newberg's treatise on class actions, this court has explained:

> [T]he common question prerequisite is interdependent with the notion of joinder impracticality under Rule 23(a)(1). Consideration of the common question issue requires an answer to the question: Common to whom?
>
> . . .
>
> Rule 23(a)(2) does not require that all questions of law or fact raised in the litigation be common. The test or standard for meeting the rule 23(a)(2) prerequisite is ... that is there need be only a single issue common to all members of the class .... When the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected.

*Williamson v. Sanofi Winthrop Pharms., Inc.*, 347 Ark. 89, 96, 60 S.W.3d 428, 432 (2001) (quoting Herbert B. Newberg, *Newberg on Class Actions* § 3.10 (3d ed. 1993)).

In its order, the circuit court found multiple common issues in this case, including but not limited to the following: (1) whether Arkansas law applies to the mortgage notes of the class, and if so, whether the mortgage notes are usurious under Arkansas law; (2) whether the rates of interest on the mortgage notes of the plaintiffs and the class violate Arkansas's public policy; (3) what damages are recoverable for usury violations; (4) what defenses are available to usury claims; (5) what statutes of limitations are applicable to claims for usury damages; (6) whether prejudgment interest is recoverable on usury damages awards; (7) whether the defendants are liable under principles of assignee liability, including the Home Ownership Equity Act, 15 U.S.C. § 1641, for the claims asserted in this case; (8) whether the defendants or their representatives acquired loans with unlawful interest rates from the originating lenders; (9) what was the applicable Federal Discount Rate in effect at the time of the making of the class loan; (10) whether subjective intent is admissible in the interpretation of unambiguous uniform instruments, or relevant in the choice-of-law analyses that have been applied by Arkansas courts; (11) whether usury recoveries by the class are subject to set-offs; (12) whether there are exceptions to the application of usury laws based on considerations such as the "benefit" to the borrowers; (13) whether absent class members are subject to counterclaims; (14) whether class

members were overcharged recording fees, and if so, whether this constitutes a fraud; and (15) whether this fraud is chargeable to assignees.

The Trust Defendants and United Trust argue that the class-certification order should be reversed because the few core common questions identified in the order cannot be answered en masse and must be answered loan-by-loan. The Trust Defendants and United Trust state that the class loans held by them were originated by twenty-six different lenders and that as the lenders change, the claims and defenses relating to the loans change. They contend that the inclusion of twenty-six different lenders in the certified classes requires consideration of twenty-six different factual and legal scenarios. Specifically, the Trust Defendants and United Trust argue that the circuit court erred in failing to exclude class members whose loans were originated by lenders other than Rosslare Funding, Inc.[1]

In its order, the circuit court made the following findings:

> The defendants argue the class certification should exclude persons whose loans were originated by lenders other than Rosslare. The Court disagrees. Arkansas law is firmly established that usury injury arises from the payment of usurious interest. *Cooprider v. Security Bank*, 319 Ark. 75, 78, 890 S.W.2d 240 (1994). Thus, usury damages and remedies may be recovered from those that hold usurious loans and have been paid usurious interest pursuant to those loans. Article 19, § 13(a) Arkansas Constitution. Here the representative plaintiffs have alleged that they and the members of the subclasses, both Rosslare and non-Rosslare borrowers, have paid usurious interest to the defendant trusts identified in the subclasses that hold or held their loans, and seek usury damages from these trusts and their trustees in the amounts and manner provided by Arkansas law. Further, because the injury to the representative plaintiffs and the members of their subclasses caused by the payment of usurious interest by them to the trust that holds or held their loans is the same, the class representatives in each subclass have standing to sue the defendant trusts and their trustees on behalf of both Rosslare

---

[1] Plaintiffs' initial complaint requested certification of a class whose loans were all originated by a single lender, Rosslare Funding, Inc. Plaintiffs' third amended complaint modified the class definition to include all Arkansas loans held by the Trust Defendants, whether they were originated by Rosslare or some other lender.

and non-Rosslare borrowers. Accordingly, non-Rosslare borrowers cannot be excluded from the class.

■ The circuit court did not abuse its discretion in concluding that the nonRosslare borrowers could not be excluded from the class. Because the plaintiffs allege that the defendants charged usurious rates, not that the loan originators did so, the inclusion of nonRosslare borrowers does not destroy commonality.

The Trust Defendants and United Trust next argue that the legal basis for the named plaintiffs' claims cannot be considered without first deciding which state's law to apply to each transaction. Appellees respond that the notes and mortgages of the class are unambiguous, uniform instruments and that proof of subjective intent is not proper in the interpretation of such instruments. They contend that the intent that is relevant in this case is the intent expressed in the language of the notes and mortgages and that this intent can be determined on a class-wide basis because the mortgagor notes of the plaintiffs and the class contain substantially the same language.

The circuit court rejected the arguments of the Trust Defendants and United Trust that the choice-of-law determination had to be conducted on an individual, loan-by-loan basis, stating:

> The Court agrees with plaintiffs' analysis of the existence of common questions at to choice of law. No party has contended that the mortgage notes in this case are ambiguous. The Court concludes that whether the mortgage notes express an intent as to applicable law can be determined from an examination of the language of the mortgage notes, and that this can be done on a class-wide basis, because the language of the mortgage notes of the class is substantially the same. The Court further concludes from the testimony of Bill Baggott [the former president of Rosslare] and the class representatives, that the notes and mortgages of the plaintiffs and the class were solicited, negotiated, processed, and closed in substantially the same manner, presenting common questions of law or fact as to choice of law under any analysis that has been applied by the Arkansas Supreme Court for determining choice of law.

■ The Trust Defendants cite *Williamson v. Sanofi Winthrop Pharmaceuticals, Inc.*, 347 Ark. 89, 60 S.W.3d 428 (2001), and *Arthur v. Zearley*, 320 Ark. 273, 895 S.W.2d 928 (1995), arguing

that the holdings in these cases require individual inquiry in the present case and, thus, preclude certification. We disagree. Neither of these cases involved a choice-of-law question, and both are distinguishable from the instant case. In *Williamson*, we affirmed the circuit court's denial of an order of class certification in an action alleging breach of contract relating to a bonus incentive program. We stated:

> Several Arkansas cases have dealt specifically with the commonality issue in a class-action certification appeal. In *Cheqnet Systems, Inc. v. Montgomery*, 322 Ark. 742, 911 S.W.2d 956 (1995), this court found that the commonality requirement was satisfied where the class's main claim, which applied to every member of the class, was that Cheqnet violated the Fair Debt Collection Act by collecting $10 more than it was allowed to collect on returned checks. In *Mega Life, supra*, the court found that commonality was established through four common questions dealing with the applicability of insurance to the class members. The court found that "if these issues are resolved in favor of the class, the individual members will have suffered a common injury of paying premiums for a void insurance policy." *Mega Life*, 330 Ark. at 271. And, in *Farm Bureau Mutual Insurance, supra*, this court again found that the commonality issue was satisfied where the class members alleged that a statutory violation occurred when they all had to pay "membership dues" to the Farm Bureau Federation before insurance policies would be issued. In each of these cases, this court found that the defendant's act, independent of any action by the class members, established a common question relating to the entire class to certify the matter as a class action. In this case, however, Sanofi's actions cannot give rise to a cause of action for breach of contract without the prerequisite of the creation of a contract, which necessarily requires each plaintiff to show that a contract was formed between Sanofi and himself. Therefore, before even reaching any common question about breach of contract, each potential class member would have to establish the existence of a contract between himself and Sanofi before ever reaching the issue of whether that contract was breached. This does not lend itself to a class action, and distinguishes this action from those grounded in fraud or misrepresentation.

*Williamson*, 347 Ark. at 96, 60 S.W.3d at 432-33. Thus, the question in *Williamson* as to each class member was whether a contract existed. Here, the fact that mortgage notes were executed by the class is not in dispute.

*Arthur v. Zearley* is also distinguishable. That case involved a medical-malpractice class action that this court determined was not appropriate for class certification because of the necessity to prove "informed consent" for each class member. In the present case, the question is whether the mortgage notes express an intent to apply Arkansas law or whether Arkansas law applies under an appropriate choice-of-law test. Appellees contend that this question can be answered on a class-wide basis because the notes and mortgages of the class are in writing and contain substantially the same language and because each lender has the same or similar contacts with Arkansas. We agree, and we add that the mere fact that choice of law may be involved in the case of some parties living in different states is not sufficient in and of itself to warrant a denial of class certification. *See Security Benefit Life Ins. v. Graham*, 306 Ark. 39, 44, 810 S.W.2d 943, 945 (1991).

## Typicality

In *Mega Life & Health Insurance Co. v. Jacola*, 330 Ark. 261, 954 S.W.2d 898 (1997), we noted that the typicality requirement is satisfied if the representative's claim arises from the same wrong allegedly committed against the members of the class. In addition, we stated:

> We have also adopted the following explanation of the typicality requirement taken from Newberg's treatise on class actions:
>
>> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises *from the same event or practice or course of conduct* that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met *irrespective of varying fact patterns which underlie individual claims.*
>
> *Id.* (citing Herbert B. Newberg, *Newberg on Class Actions*, § 3.13, at pp. 166-67 (2d ed. 1985)) (emphasis added). Thus, when analyzing this factor, we focus upon the defendant's conduct and not the

injuries or damages suffered by the plaintiffs. *Direct Gen.* [328 Ark. 476, 944 S.W.2d 528 (1997)]; *Cheqnet, supra; Summons, supra.*

*Jacola,* 330 Ark. at 274-75, 954 S.W.2d at 903-04.

█ The Trust Defendants and United Trust state that the class loans were originated by twenty-six lenders, and they contend that the inclusion of these twenty-six lenders destroys typicality. We disagree. Here, the common course of conduct that the appellees allege is the acquisition by the defendant trusts of usurious loans and the appellees' subsequent payment of usurious loan installments to the defendants. The circuit court concluded that the claims of the class representatives and the class members in each subclass arise from the same injury caused by the payment by them of interest that they allege is usurious to the trust or trusts that own their loans. Further, the circuit court found that the legal theories underlying the claims of the plaintiffs and the class members alleging that the loans are usurious and charge fraudulent recording fees are identical. The circuit court noted that, because the notes and mortgages of the class representatives contain substantially the same language as those of the class, not only are the incentives of the plaintiffs directly in line with those of the absent class members, but the resolution of the plaintiffs' claims will necessarily resolve the claims of the class. Finally, the circuit court found that, with the division of the claims in this class into subclasses, the claims of the class representatives and those on behalf of the class members against the trust or trusts they alleged caused them injury are directly aligned. Accordingly, the circuit court concluded that the test of typicality had been met. Because each of the claims arose from the same wrong allegedly committed by the Trust Defendants and United Trust, the circuit court did not abuse its discretion in determining that the claims of the class representatives are typical of the claims presented in the class action.

### Adequacy

We have previously explained that the three elements of the adequacy requirement are: (1) the representative counsel must be qualified, experienced, and generally able to conduct the litigation; (2) that there be no evidence of collusion or conflicting interest between the representative and the class; and (3) the representative must display some minimal level of interest in the action, familiarity with the practices challenged, and ability to assist in decision making as to the conduct of the litigation. *Jacola,* 330 Ark. at 275, 954 S.W.2d at 904.

The Trust Defendants and United Trust did not challenge the professional competence of counsel to represent the plaintiffs. Additionally, no evidence was presented that the class representatives had a conflict of interest with class members. United Trust did, however, challenge the adequacy of the class representatives.

United Trust states that none of the named class representatives have claims arising from loans issued by any lender except Rosslare and that contained within the United Trust subclasses are twenty-one nonRosslare originated loans. Therefore, United Trust argues that the named class representatives, all of whose loans were originated by Rosslare, are inadequate representatives of class members whose loans were originated by other lenders. Specifically, United Trust contends that Joyce and Willie Turner are inadequate representatives. United Trust states that, while the only lender the Turners sued is their own lender, Rosslare, they also purport to bring claims on behalf of United Trust subclass members in relation to six or seven nonRosslare lenders with whom they have no ties. In support of its argument, United Trust cites *Farm Bureau Policy Holders v. Farm Bureau Mutual Insurance Co. of Arkansas, Inc.*, 335 Ark. 285, 984 S.W.2d 6 (1998). In that case, a class representative had one type of insurance policy but sought to represent persons with different coverage, although all of the coverage was issued by the same insurer. We stated that we failed to see how the appellant "as class representative can raise an issue on behalf of the class which pertains to insurance coverage that he did not have." *Id.* at 303, 984 S.W.2d at 15. United Trust contends that, like the appellant in the *Farm Bureau* case, the Turners cannot raise an issue on behalf of class members that pertains to lenders that are strangers to their loan and with which they did not deal.

Appellees respond that, although United Trust cites language from *Farm Bureau* questioning how a class representative can raise a claim that he does not have, plainly the Turners, like all class members, have a claim of usury against United Trust in the instant case. We agree.

Furthermore, the circuit court specifically addressed United Trust's arguments regarding the Turners. The circuit court made the following findings:

> United Trust has challenged the adequacy of Joyce and Willie Turner, as representatives of the United Trust subclass. However, from their affidavits and depositions, the Court concludes that Joyce and Willie Turner are likewise adequate representatives.

Specifically, Joyce Turner testified in deposition that she is a high school graduate and is gainfully employed by Klipsch, LLC as an inspector of stereo equipment. She further testified that she read the complaint, looked at Arkansas law to see how much interest they were overcharged, consulted with her attorney, spent 5-10 hours prior to her deposition working on the case, appeared at the deposition, and agreed to appear at trial. She stated that she understood that her case against the defendants was for charging too much interest and overcharging recording fees. She said she understood that the class she is representing consisted of people with claims like hers, and understood that her duties were to review documents and contact her lawyer as to questions that might help the case. Thus, although United Trust argues that Ms. Turner has not displayed sufficient interest, the Court finds otherwise, and concludes that Ms. Turner meets the test of adequacy.

The Court reaches the same conclusion with regard to adequacy of Willie Turner to represent the United Trust subclass. Mr. Turner's affidavit and deposition show he has a GED degree, that he has taken college courses, and that he is gainfully employed by Cooper Tire in Texarkana, Arkansas. Mr. Turner testified in deposition that he filled out a questionnaire in 2002 stating that he was interested in serving as a class representative and that he has read the complaint and the law relating to interest rates. He further testified that he understands that the complaint alleges the defendants overcharged interest and recording fees, that he understands that the damages to be recovered are twice the interest paid, and cancellation of future interest, that he understands that his duties as a class representative are to find out what the case is about, what the defendants have done wrong, to help his lawyer make decisions and to show up in court. Mr. Turner testified that he feels that he can adequately represent the class, and believes his claims are typical of those of the class, because his claims and the claims of the class for overcharging interest and recording fees are the same. From this, the Court finds that Mr. Turner knows what class of people he will represent, has displayed more than a minimal level of interest in the action, understands the practices challenged and has demonstrated an ability to assist in decision making as to the conduct of the litigation. Accordingly, the Court concludes that Mr. Turner is an adequate class representative.

■ Given that the circuit court found that the Turners had claims that were the same as the other members of the class, it is clear that the circuit court believed that the Turners, Rosslare

borrowers, could represent the interests of the other class members, some of whom were nonRosslare borrowers. The claims — usury and fraud — are the same for all members of this subclass. We hold that the circuit court did not abuse its discretion in finding that the Turners were adequate class representatives of the United Trust subclass.

### Numerosity

We discussed the numerosity requirement in *BPS, Inc. v. Richardson*, 341 Ark. 834, 842, 20 S.W.3d 403, 406 (2000):

> In *Cheqnet Systems, Inc. v. Montgomery*, 322 Ark. 742, 911 S.W.2d 956 (1995), we held that the exact size of the proposed class and the identity of the class members need not be established for the court to certify a class, and the numerosity requirement may be supported by common sense. We have not adopted a bright-line rule to determine how many class members are required to satisfy the numerosity requirement. *Mega Life, supra* (citing *Summons v. Missouri Pac. R.R.*, 306 Ark. 116, 813 S.W.2d 240 (1991) (approving a class of several thousand claimants)); *International Union of Elec., Radio, & Mach. Workers v. Hudson*, 295 Ark. 107, 747 S.W.2d 81 (1988) (declaring that "at least several hundred" class members were sufficient); *Cooper Communities, Inc. v. Sarver*, 288 Ark. 6, 701 S.W.2d 364 (1986) (holding that 184 potential class members were enough); *City of North Little Rock v. Vogelgesang*, 273 Ark. 390, 619 S.W.2d 652 (1981) (rejecting a class of only seventeen potential plaintiffs)).

In its order of certification, the circuit court found that, although there is no agreement on the exact numbers, it appears from the briefs of counsel and matters of record that the FirstPlus subclass has approximately 206 class members, that the Keystone P1 subclass has approximately 165 class members, that the Keystone P2 subclass has approximately 126 class members, that the Keystone P3 subclass has approximately 81 class members, and that the United Trust subclass has 41 class members.

United Trust contends that numerosity is lacking in its subclass. *Newberg on Class Actions* states that "the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone." Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 3.5, at 247 (4th ed. 2002).

United Trust does not appeal from the ruling that forty-one class members meet the test of numerosity, but instead argues that twenty-nine members of this class do not share "common questions of liability" with the remaining twelve and, therefore, the test for numerosity has not been met. Specifically, United Trust contends that twenty-one nonRosslare borrowers should be excluded because the class representatives "are not adequate to represent them," that borrowers in bankruptcy should be excluded because their claims belong to the bankruptcy estate, and that one set of borrowers did not pay "excess interest," based on the United Trust's "amortization analysis."

Having already determined that the Turners are adequate class representatives of a class consisting of both Rosslare borrowers and nonRosslare borrowers, we need not address United Trust's argument that the twenty-one nonRosslare borrowers should be excluded because the class representatives are inadequate. We now turn to the remaining arguments.

■ Appellees argue that the contention that the usury recovery of a class member in bankruptcy belongs to the bankruptcy estate is in essence a contention that an absent class member does not have a cause of action, which is improper for a court to consider in determining class certification. We agree. The subject of this appeal deals strictly with whether a class was properly certified. We have repeatedly held that we will not delve into the merits of a case when reviewing an order denying or granting class certification. *See, e.g.*, *THE/FRE, Inc. v. Martin*, 349 Ark. 507, 78 S.W.3d 723 (2002).

In addition, we are not persuaded by United Trust's argument that the absent class members who have filed for bankruptcy should be excluded because they "lack standing" to make claims. In his treatise on class actions, Professor Newberg has explained that "passive members need not make any individual showing of standing, because the standing issue focuses on whether the plaintiff is properly before the court, not whether represented parties or absent class members are properly before the court." Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 2.7, at 88 (4th ed. 2002).

We also find no merit in United Trust's argument that a class member who did not actually pay excess interest should be excluded from the class. The question of whether a class member actually paid interest in excess of the maximum lawful rate would require this court to go to the merits of the case, and this is simply

not proper in determining if class certification was proper. *See Johnson's Sales Co. v. Harris*, 370 Ark. 387, 260 S.W.3d 273 (2007). The circuit court did not abuse its discretion in finding that the numerosity requirement was satisfied.

*Predominance*

The starting point in examining the predominance issue is whether a common wrong has been alleged against the defendant. *American Abstract, supra*. If a case involves preliminary, common issues of liability and wrongdoing that affect all class members, the predominance requirement of Rule 23 is satisfied even if the circuit court must subsequently determine individual damages in bifurcated proceedings. *Id*. Moreover, this court has recognized that a bifurcated process of certifying a class to resolve preliminary, common issues and then decertifying the class to resolve individual issues, such as damages, is consistent with Rule 23. *See Jacola, supra*. On predominance, this court has stated:

> The predominance element can be satisfied if the preliminary, common issues may be resolved before any individual issues. In making this determination, we do not merely compare the number of individual versus common claims. Instead, we must decide if the issues common to all plaintiffs "predominate over" the individual issues, which can be resolved during the decertified stage of bifurcated proceedings.

*Fraley v. Williams Ford Tractor & Equip. Co.*, 339 Ark. 322, 344-45, 5 S.W.3d 423, 437 (1999) (citations omitted). Thus, the question is whether there are overarching issues that can be addressed before resolving individual issues. *Beverly Enters.–Ark., Inc. v. Thomas*, 370 Ark. 310, 259 S.W.3d 445 (2007).

The Trust Defendants and United Trust raise a number of individual defenses that they claim defeat the predominance requirement. On appeal, the Trust Defendants and United Trust raise the individual defenses of whether the claims of the class are subject to holder-in-due-course defenses and whether the defendants are liable for fraud claims. Both the Trust Defendants and United Trust raise the individual defenses of whether the claims are subject to counterclaims and whether participation in bankruptcy proceedings bars, limits, or reduces usury claims. United Trust raises the defenses of whether the class members have actually paid interest in excess of the maximum lawful rate and whether certain loans may have been table funded and are exempt.

The circuit court concluded that the individual defenses raised by the Trust Defendants and United Trust "challenge the right of the class member to recover, and do not go to the common issues of the defendants' liability, and are therefore insufficient to prevent a finding of predominance." We agree. We have stated that "[t]he mere fact individual issues and defenses may be raised by the [defendant] regarding the recovery of individual members cannot defeat class certification where there are common questions concerning the defendant's alleged wrongdoing which must be resolved for all class members." *The Money Place, LLC v. Barnes*, 349 Ark. 518, 531, 78 S.W.3d 730, 738 (2002). In *SEECO, Inc. v. Hales*, we stated that "[c]hallenges based on the statutes of limitations, fraudulent concealment, releases, causation, or reliance have usually been rejected and will not bar predominance satisfaction because those issues go to the right of a class member to recover, in contrast to underlying common issues of the defendant's liability." 330 Ark. 402, 413, 954 S.W.2d 234, 240 (1997) (quoting 1 Herbert B. Newberg, *Newberg on Class Actions* § 4.26, at 4-104 (3d ed. 1992)). *See also Fraley, supra* (holding that the circuit court could not examine the affirmative defenses of release and consent in deciding whether the class should be certified); *Johnson's, supra* (The fact that a party "may bring affirmative defenses and counterclaims against individual members of the class does not disqualify the case from certification.").

In arguing these defenses before this court, the Trust Defendants and United Trust are, in essence, requesting that this court delve into the merits of the case. We have repeatedly refused to do so. In *BNL Equity Corp. v. Pearson*, 340 Ark. 351, 10 S.W.3d 838 (2000), we stated:

> The appellants contend that discussion of the Rule 23 criteria must, by necessity, bring into play some examination of the merits of the claims including their defenses, and that we should not rigidly enforce our proscription against a merits analysis at this stage. Without weighing the merits, the appellants posit that this court cannot decide whether the claims of the class representatives are typical or that claims of the class members are common and predominate.
>
> The appellants, however, are plowing old ground in raising an issue that has clearly been decided by this court. Most recently, we said:
>
>> We have held that neither the trial court nor the appellate court may delve into the merits of the underlying claim in determin-

ing whether the elements of Rule 23 have been satisfied. In that regard a trial court may not consider whether the plaintiffs will ultimately prevail, or even whether they have a cause of action. Thus, the propriety of a class action is "basically a procedural question." (Citations omitted.)

*Fraley v. Williams Ford Tractor & Equip. Co., 339 Ark. at 335, 5 S.W.3d at 431 (1999).*

*BNL Equity Corp.*, 340 Ark. at 356-57, 10 S.W.3d at 841.

■ The Trust Defendants and United Trust may have defenses available to them as to various individual members or even subclasses, but this is no reason to deny certification. *See The Money Place, supra.* In reviewing whether the predominance element has been satisfied, the question is whether there are overarching issues that can be addressed before resolving individual issues. *See Beverly Enters., supra.* Here, the common issues regarding usury, fraud, and choice of law can be addressed before individual issues are resolved. We hold that the circuit court did not abuse its discretion in concluding that the predominance requirement was satisfied.

### Superiority

This court has repeatedly held that the superiority requirement is satisfied if class certification is the more efficient way of handling the case, and it is fair to both sides. *Johnson's, supra; Beverly Enters., supra; The Money Place, supra.* Real efficiency can be had if common, predominating questions of law or fact are first decided, with cases then splintering for the trial of individual issues, if necessary. *The Money Place, supra* (citing *SEECO, supra*). When a trial court is determining whether class-action status is the superior method for adjudication of a matter, it may be necessary for the trial court to evaluate the manageability of the class. *See Asbury Auto. Group, supra.*

United Trust argues that a class action is not the superior method of handling the litigation in this case because a choice-of-law determination will have to made for each loan. United Trust claims that the circuit court erred in failing to make a choice-of-law determination prior to certifying the class. The appellees argue that United Trust is making this argument for the first time on appeal; therefore, this court should not consider it. We believe the appellees are correct. The following colloquy demonstrates that United Trust failed to raise this argument below:

> THE COURT: Is that the issue you're raise [sic], choice of law?

> MR. MAYFIELD: Judge, it's the point to show that the answer to the choice of law question is not in common. We're not here today asking you to decide that.

Then, when counsel for United Trust continued making arguments, counsel for the appellees again objected, resulting in the following exchange.

> MR. VEHIK: We're getting back into the same merits argument. I mean, it's, I'm not putting on any testimony —

> THE COURT: Well, I'm not making any decisions today or tonight when I take this home over the choice of law issue. Only whether there is a certifiable class action matter.

> MR. MAYFIELD: Right, and I'm just trying —

> THE COURT: Go ahead.

> MR. MAYFIELD: — to highlight . . .

■ United Trust's failure to raise this argument below precludes this court from addressing it on appeal. It is well settled that this court will not consider arguments raised for the first time on appeal. *See, e.g., Baptist Health v. Murphy*, 365 Ark. 115, 226 S.W.3d 800 (2006).

■ Finally, both the Trust Defendants and United Trust appear to assert that, due to all of the individual issues raised in this case, a class action is not the superior method of handling the litigation. Here, the circuit court concluded that a single class action instead of over 600 individual lawsuits filed throughout the circuit courts in Arkansas to try the common issues of usury and fraud is the most efficient way to resolve this litigation; benefits the interests of judicial economy; and is fair to both sides, as the individual issues that the defendants have raised, if they have merit, can be bifurcated and tried in separate lawsuits. The circuit court

also noted that, with the hindsight of presiding over a similar class-action suit, it could conclude that the individual issues raised by the defendants would not pose problems to the manageability of the case as a class action. We have noted that the question of superiority is very much related to the broad discretion conferred on a circuit court. *See Cheqnet Sys., Inc. v. Montgomery*, 322 Ark. 742, 911 S.W.2d 956 (1995). We cannot say that the circuit court abused its discretion in finding that the superiority requirement was satisfied.

For the foregoing reasons, we affirm the circuit court's order certifying a class action in this case.

Affirmed.