JOHNSON'S SALES COMPANY, INC., Kent Johnson's
Warehouse Showroom, Inc., Johnson's Warehouse Showroom, Inc.,
and Best Buy Home Furnishings, Inc. *v.* Wanda HARRIS, on Behalf
of Herself and Those Similarly Situated, and Decorrien Flemming

06-1237                                           260 S.W.3d 273

Supreme Court of Arkansas
Opinion delivered June 28, 2007

*Eugene D. Bramblett*, for appellants.

*Allen Law Firm*, by: *H. William Allen* and *Christian Harris*, for appellee Wanda Harris and those similarly situated.

DONALD L. CORBIN, Justice. Appellants Johnson's Sales Company, Inc., Kent Johnson's Warehouse Showroom, Inc., Johnson's Warehouse Showroom, Inc., and Best Buy Home Furnishings, Inc. (collectively "Johnson's"), appeal from the Hempstead County Circuit Court's order granting class certification under Ark. R. Civ. P. 23. On appeal, Johnson's raises three arguments for reversal: the circuit court abused its discretion in finding that the elements of (1) commonality, (2) predominance, and (3) superiority supported class certification. Because this is an interlocutory appeal pursuant to Ark. R. App. P.–Civ. 2(a)(9), our jurisdiction is proper under Ark. Sup. Ct. R. 1-2(a)(8). We find no error and affirm.

Appellees Wanda Harris and Decorrien Flemming (collectively "Harris"), as individuals who entered into and held purchase agreements with Johnson's retail stores to purchase furniture through periodic payments, filed a class–action complaint against Johnson's.[1] Specifically, Harris claimed that, under the purchase agreements, Johnson's charged an interest rate in excess of that allowed by article 19, section 13 of the Arkansas Constitution. Harris further alleged that class certification was proper because Johnson's eight retail stores also charged other customers usurious rates during the same time period.[2]

On May 21, 2004, and July 29, 2004, hearings were held on the issue of class certification. After full consideration of all the evidence, briefs, and arguments submitted in support of and in

---

[1] Harris's original complaint was filed on December 4, 2002. A final amended complaint was filed on July 29, 2005.

[2] Harris's motion for class certification was originally filed on January 2, 2004. An amended motion for class certification was filed on November 19, 2004.

opposition of the motion for class certification, the circuit court granted class certification and entered specific findings of fact and conclusions of law respecting class certification. Furthermore, the circuit court defined the class as follows:

> All persons who entered into or held purchase agreements with eight (8) retail stores owned by Defendants to finance goods through periodic payments from July 24, 1997, to present and whose purchase agreements state on their face an "Annual Percentage Rate" in excess of the Discount Rate on 90-Day Commercial Paper as promulgated by the Federal Reserve Bank in St. Louis, Missouri, in effect on the date that their purchase agreements were signed.

On appeal, both parties and the circuit court have stipulated that the proposed class was intended to state:

> All persons who entered into or held purchase agreements with eight (8) retail stores owned by Defendants to finance goods through periodic payments from July 24, 1997, to present and whose purchase agreements state on their face an "Annul Percentage Rate" in excess of five percent (5%) per annum above the Discount Rate on 90-Day Commercial Paper as promulgated by the Federal Reserve Bank in St. Louis, Missouri, in effect on the date that their purchase agreements were signed. [Emphasis supplied.]

On appeal, Johnson's argues that the circuit court erred in certifying the underlying case as a class action. Specifically, it asserts that the circuit court abused its discretion in finding that the Rule 23 requirements of (1) commonality, (2) predominance, and (3) superiority were met.

Circuit courts are given broad discretion in matters regarding class certification and we will not reverse a circuit court's decision to grant or deny class certification absent an abuse of discretion. *Beverly Enters.-Ark., Inc. v. Thomas*, 370 Ark. 310, 259 S.W.3d 445 (2007). When reviewing a circuit court's class-certification order, this court reviews the evidence contained in the record to determine whether it supports the circuit court's decision. *Id.* This court does not delve into the merits of the underlying claims at this stage, as the issue of whether to certify a

class is not determined by whether the plaintiff has stated a cause of action for the proposed class that will prevail. *Id.*

Rule 23 provides the requirements for class certification. Specifically, the following six requirements must be met before a lawsuit can be certified as a class action under Rule 23: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy; (5) predominance; and (6) superiority. *See Beverly,* 370 Ark. 310, 259 S.W.3d 445. As stated above, Johnson's is only challenging the circuit court's ruling as to three of these criteria: commonality, predominance, and superiority.

*Commonality*

Rule 23(a)(2) requires the circuit court to make a determination that "there are questions of law or fact common to the class." Ark. R. Civ. P. 23(a)(2). This court's case law establishes that this requirement be case specific. *See Van Buren Sch. Dist. v. Jones,* 365 Ark. 610, 232 S.W.3d 444 (2006). Rule 23(a)(2) does not require that all questions of law or fact be common, but rather the standard is that there need be only a single issue common to all members of the class. *Id.* Moreover, when the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected. *Id.*

Here, the class is defined as all persons who entered into or held purchase agreements with Johnson's and whose purchase agreements state *on their face* an Annual Percentage Rate (APR) in excess of five percent per annum above the discount rate on 90-day commercial paper. Thus, there clearly is a common usury claim that runs amongst all class members. Consequently, the circuit court did not abuse its discretion in finding that the commonality element was satisfied.

Furthermore, Johnson's argument that the threshold question of whether or not a prospective class member actually paid interest in excess of the maximum lawful rate cannot be answered by the common questions of law or fact found by the circuit court is without merit. This argument fails for two reasons. First, Johnson's has not challenged the class definition and the class definition is very clear that class members are individuals who have entered into purchase agreements that, on their face, contain an

APR in excess of five percent above the discount rate.[3] Second, just as the circuit court determined, Johnson's argument would require this court to go to the merits of the case and this is simply not proper in determining if class certification was proper. *See Beverly*, 370 Ark. 310, 259 S.W.3d 445. Therefore, the circuit court did not abuse its discretion in finding that the element of commonality supported class certification.

### Predominance

Rule 23(b) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members[.]" Ark. R. Civ. P. 23(b). This court has explained that the starting point in examining the predominance issue is whether a common wrong has been alleged against the defendant. *See Beverly*, 370 Ark. 310, 259 S.W.3d 445. If a case involves preliminary, common issues of liability and wrongdoing that affect all class members, the predominance requirement of Rule 23 is satisfied even if the circuit court must subsequently determine individual damage issues in bifurcated proceedings. *Id.* Moreover, this court has recognized that a bifurcated process of certifying a class to resolve preliminary, common issues and then decertifying the class to resolve individual issues, such as damages, is consistent with Rule 23. *Id.* Moreover, this court has repeatedly stated:

> [t]he predominance element can be satisfied if the preliminary, common issues may be resolved before any individual issues. In making this determination, we do not merely compare the number of individual versus common claims. Instead, we must decide if the issues common to all plaintiffs "predominate over" the individual issues, which can be resolved during the decertified stage of bifurcated proceedings.

---

[3] It should be noted that in its reply brief, Johnson's argues that the class definition reaches the underlying merits of the usury claim and must fail in accordance with the reasoning of *Southwestern Bell Yellow Pages v. Pipkin Enterprises, Inc.*, 359 Ark. 402, 198 S.W.3d 115 (2004). While this argument may be considered a response to a portion of Harris's commonality argument that the class definition does not consider the merits of the underlying usury claim, Johnson's is essentially raising the class-definition argument for the first time in its reply brief. This court will not consider arguments made for the first time in the appellants' reply brief because the appellees are not given a chance to rebut the argument. *See Coleman v. Regions Bank*, 364 Ark. 59, 216 S.W.3d 569 (2005).

*Id.* at 317, 259 S.W.3d at 450; *see also Van Buren,* 365 Ark. 610, 232 S.W.3d 444. Thus, the question is whether there are overarching issues that can be addressed before resolving individual issues. *Beverly,* 370 Ark. 310, 259 S.W.3d 445. However, if preliminary issues are individualized, then the predominance requirement is not satisfied. *See id.* Indeed, a case that presents numerous individual issues regarding the defendants' conduct, causation, injury, and damages will best be resolved on a case-by-case basis. *Id.*

In the present case, as stated above, a common wrong — the usury claim — is alleged against Johnson's. Johnson's claims that predominance cannot be met because the usury question for each prospective class member will require the court to examine the payment history of each customer to determine the actual interest rate at which he repaid his loan. This argument is flawed.

First, as this court has explained, if a case involves preliminary, common issues of liability and wrongdoing that affect all class members, the predominance requirement is satisfied even if the circuit court must subsequently determine individual damage issues in bifurcated proceedings. *See id.* Here, there is clearly an overlying common wrong alleged against Johnson's. Second, the fact that Johnson's may bring affirmative defenses and counterclaims against individual members of the class does not disqualify the case from certification. The predominance element can be satisfied if the preliminary, common issues may be resolved before individual issues, and the question is whether this is an overarching issue that can be addressed before resolving individual issues. Here, the usury claim is such an overarching issue. Lastly, Johnson's predominance argument, much like its commonality argument, would require this court to delve into the merits of the case, which we will not do. Consequently, the circuit court did not abuse its discretion in concluding that the need to resolve the usury question common to each class member outweighed the possibility of individual defenses, such that the predominance requirement was satisfied.

*Superiority*

Rule 23(b) requires "that a class action is superior to other available methods for fair and efficient adjudication of the controversy." Ark. R. Civ. P. 23(b). This court has repeatedly held that the superiority requirement is satisfied if class certification is the

more "efficient" way of handling the case, and it is fair to both sides. *See Beverly*, 370 Ark. 310, 259 S.W.3d 445; *Van Buren*, 365 Ark. 610, 232 S.W.3d 444. Where a cohesive and manageable class exists, we have held that real efficiency can be had if common, predominating questions of law or fact are first decided, with cases then splintering for the trial of individual issues, if necessary. *Id.* This court has further stated that when a circuit court is determining whether class-action status is the superior method for adjudication of a matter, it may be necessary for the circuit court to evaluate the manageability of the class. *Id.* Furthermore, the avoidance of multiple suits lies at the heart of any class action. *Beverly*, 370 Ark. 310, 259 S.W.3d 445.

■ Here, the circuit court found that the superiority requirement was satisfied because real efficiency will be achieved in this case if the common, predominating question of usury is decided first, with consideration of individual claims to be taken up later. Johnson's argument is primarily that the circuit court is unable to determine the amount of interest charged from the face of the purchase agreements and, consequently, each and every class member would have to come forth to prove the amount "charged." This argument is without merit as members of the class are determined based upon what the APR is *on the face* of the purchase agreement. Johnson's has not challenged this class definition, thus there is no need for the circuit court to determine the actual amount of interest charged. Moreover, to examine the superiority issue as argued by Johnson's would again require this court to look into the merits of the case.

■ Additionally, in the spirit of class actions, real efficiency can be had if common, predominating questions of law or fact are first decided, with cases then splintering for the trial of individual claims. This is such a case. As the circuit court stated, because the individual claims amounts may be small, individual suits are inappropriate and a class action is a superior way to resolve the claims of the class members. This was not an abuse of discretion because a class action is the superior method to resolve the overarching usury claim common to all class members. Moreover, a class action is fair to both sides in this case, as it is a means for all class members to have their claims heard, and Johnson's will not have to defend against the same assertion of liability in a multitude of different lawsuits. As this court has explained, the class-action procedure is judicially efficient in resolving not only common

claims but also common defenses. *See The Money Place, LLC v. Barnes*, 349 Ark. 518, 78 S.W.3d 730 (2002). Therefore, the circuit court did not abuse its discretion in finding that the superiority requirement was satisfied.

Based upon the foregoing reasons, we affirm the circuit court's order granting class certification.

Affirmed.

HANNAH, C.J., and GLAZE, J., dissent.

TOM GLAZE, Justice, dissenting. I disagree that this is a proper class under Ark. R. Civ. P. 23. The majority correctly posits that, as a general rule, a claim for usury is determined when the "contract [is] entered into." Ark. Const. art. 19, § 13; *see also General Contract Corp. v. Duke*, 223 Ark. 938, 270 S.W.2d 918 (1954) ("our cases hold that the transaction is to be judged at the time the contract is entered into, and not thereafter."). The majority, however, mistakenly assumes that *the face of the contract alone* is *all* the evidence that is required to determine whether a usurious rate was charged at the time the contract was entered into. I find no case law to suggest this proposition. In fact, Arkansas case law indicates that, in order to determine whether a rate is usurious, the language in the contract must be read in context of its stated terms and how allocation of payments were made pursuant to the note. *See Cooprider v. Security Bank*, 319 Ark. 75, 77, 890 S.W.2d 240, 242 (1994). In *Cooprider, supra,* this court stated:

> The chancellor found the renewal note usurious because the terms of the loan agreement itself were usurious. Appellants rely on *Dillon v. Resolution Trust Corp.*, 306 Ark. 173, 811 S.W.2d 765 (1991). In *Dillon,* we said the test of whether the note is usurious is judged as of the time the note was made. Appellants earnestly insist that language must govern in this case. But, as always, it must be read in context, and in *Dillon* it is clear that by *both the terms of the note and the allocation of payments made pursuant to the note,* a usurious rate of interest was being collected from the borrower. That did not occur in this case.

*Id.* (emphasis added). Stated simply, there is nothing in our case law or in article 19, section 13 that requires the examining court to only look at the face of the contract alone in determining whether a usurious interest rate was "charged."

Here, at the time the contract was entered into, the contract did reflect an APR rate that was facially usurious. However, evidence presented to the circuit court also indicated that, in a "retail installment contract with pre-computed interest," like the contract that Harris entered into in this case, the amount of interest "reflected" on the face of the agreement, at the time the contract was formed, might not indicate the actual amount of interest "charged." Paula McMahan, an employee of Johnson's who was responsible for setting the in-house interest rate on the corporate computer system, testified to the following before the circuit court:

> COUNSEL: Do you know of any difference between what the APR rate shown on the contract is, is there any difference between the percentage of APR and the percentage of interest that's charged interest rate that's charged on any contract?

> Ms. McMAHAN: Yes, that's what I was telling you before.

Previously, Ms. McMahan had attested that the APR rate provided on the face of the "installment contract with pre-computed interest" was merely an *estimate* of the amount to be charged at the time the contract was entered into, and *not* the actual amount "charged." Tom Garrison, an employee of the Computer Services Company, corroborated Ms. McMahan's testimony that the "stated" interest on the contract was only an estimate of the amount to be charged at the time the contract was entered into, and the actual amount "charged" often varied. In other words, evidence before the circuit court reflected that the amount "charged" at the time of the contract could not be determined solely from the face of the purchase agreement, and that analysis is consistent with our case law.[1] By the majority's holding, our judicial hands are forever tied to the contract terms, never being permitted to consider anything beyond the face of the agreement.

The superiority requirement contained in Ark. R. Civ. P. 23(b) states that a class action may be maintained if the action is "superior to other available methods for the fair and efficient

---

[1] Harris's own expert, Andy Terry, Ph.D., also testified regarding the APR stated on the purchase agreement. In essence, Dr. Terry's testimony that one must "assum[e] that the customers make payments according to the contract" compels a conclusion that the stated interest rate is merely an estimate and is not necessarily equivalent to the amount "charged."

adjudication of the controversy." The superiority requirement for class certification will be satisfied if class certification is the more "efficient" way of handling the case, and it is fair to both sides. *Fraley v. Williams Ford Tractor & Equip.*, 339 Ark. 322, 333, 5 S.W.3d 423, 430 (1999); *see also* Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 4:27 (4th ed. 2002).

Given this potential discrepancy between the actual interest stated and the interest ultimately charged, the circuit court would be required, with respect to every individual class member, to determine the difference between the "stated" interest rate and "charged" interest. Stated simply, the circuit court would have to perform a mathematical analysis on each and every purchase agreement in order to determine whether the interest charged was usurious. Thus, proceeding as a class action would not be an "efficient" method of handling this case. *See Williamson v. Sanofi Winthrop Pharm.*, 347 Ark. 89, 101, 60 S.W.3d 428, 436 (2001) (because the trial court would have to hear each class member's testimony regarding his or her understanding about which paper-work applied, as well as consider all of the evidence from each plaintiff regarding whether he or she agreed to a contract, a class action could not be superior method of handling the case).

Despite the majority's contention otherwise, our analysis does not require delving into the merits; in other words, it does not require determining what the class members ultimately will pay or have paid in interest. Rather, what the majority fails to require, and what the law does require, is that the terms of the contract be examined to reveal whether the contract obligates the borrower to pay a rate in violation of the usury provision of the constitution. The question of what the borrower is obligated to pay is not answered by looking at the face of the contract as the majority concludes.

Because I would reverse on the superiority requirement, I respectfully dissent.

HANNAH, C.J., joins.