2009 Ark. 480

**SIMPSON HOUSING SOLUTIONS,
LLC, et al., Appellants,**

v.

**Juan C. HERNANDEZ et al., Appellees.**

No. 08–396.

Supreme Court of Arkansas.

Oct. 8, 2009.

Rehearing Denied Nov. 19, 2009.

Conner & Winters, LLP, by: Robert L. Jones, III, Fayetteville, and Laser Law Firm, P.A., by: J. Cotten Cunningham, Little Rock, for appellant Simpson Housing Solutions, LLC.

Hirsch Law Firm, P.A., by: E. Kent Hirsch, Springdale; The Evans Law Firm, by: Marshall Dale Evans, Fayetteville; Odom Law Firm, P.A., by: Alan L. Lane, Fayetteville; Jeff Slaton; and, Hawkins Law Firm, P.A., by: Cindy L. Hawkins, Springdale for appellees.

ROBERT L. BROWN, Justice.

This is an interlocutory appeal from the circuit judge's order granting class certification for one subclass (Subclass A) and denying class certification for another subclass (Subclass C). Appellants have appealed the order relating to Subclass A, and appellees have cross-appealed the order concerning Subclass C. Some of the cross-appellees have also moved to dismiss the cross-appeal. We affirm the order of the circuit judge and deny the motions to dismiss.

The plaintiffs in this matter are former residents of the Springdale Ridge Apartments ("Springdale Ridge") in Springdale. They filed a complaint against various defendants regarding the alleged presence of dangerous levels of carbon monoxide in the apartment units and subsequently amended that complaint three times. The plaintiffs and putative class representatives (appellees and cross-appellants), as set forth in the Fourth Amended Complaint, are:

- Juan and Dalia Hernandez—Residents of Springdale Ridge from August 2003 to the present.
- Mark and Jennifer Raabe—Residents of Springdale Ridge from July 13, 2002 to February 2003.
- Melanie Cash—Resident of Springdale Ridge from December 30, 2003 to September 1, 2004.
- Michael Cline—Resident of Springdale Ridge from May 3, 2003 to August 16, 2004.
- Donna Hays—Resident of Springdale Ridge from October 2003 to September 2004.

The defendants, as set forth in the Fourth Amended Complaint, are:

*The Owners/Managers (hereinafter "Simpson")* (appellants and cross-appellees)

- Simpson Housing Solutions, LLC— Parent Entity of Deer Run, Fox Run, and Affordable Multi–Family.[1]
- Simpson Housing Limited Partnership, LLLP—Unclear from the record but appears to be part of Simpson Housing Solutions, LLC.
- Deer Run Limited Partnership—Current or Former Owner of Springdale Ridge.
- Fox Run Limited Partnership of Springdale—Current or Former Owner of Springdale Ridge.

---

1. According to the Fourth Amended Complaint, Simpson Housing Solutions, LLC is the current owner of Springdale Ridge, as the owner, alter-ego, and parent of Affordable Multi–Family, Deer Run, and Fox Run. Simpson's brief on appeal, however, indicates that Simpson Housing, LLC, Simpson Housing Limited Partnership, LLP, and Affordable Multi–Family are the former owners and that Deer Run and Fox Run are now the current owners.

- Affordable Multi–Family, LLC—General Partner of Fox Run and Deer Run.
- Walling Development, a/k/a Walling Development Co. and a/k/a Walling Development, Inc.—Developer and former owner of Springdale Ridge.[2]
- Pinnacle Realty Management Co., a/k/a Pinnacle Realty Management, Inc.—Former Management Company of Springdale Ridge.
- Heather Hardcastle—Manager of Springdale Ridge.

*Builders* (cross-appellees)

- Atlas Construction of Arkansas, LLC—General Contractor of Springdale Ridge.[3]
- A.R. Mays Construction, Inc., f/k/a Devcon, Inc., a/k/a Devcon by A.R. Mays Construction—General Contractor of Springdale Ridge until September 2001.
- L & L Plumbing and Heating, Inc.— Subcontractor involved in the building of Springdale Ridge.

*Architects* (cross-appellees)

- Architecture Design & Development— Designed Springdale Ridge.
- Thomas O'Neill—Principal and individual who provided the engineering plans for Springdale Ridge.
- Jerry Verdin—Provided the engineering plans for the project.

*Other* (cross-appellees)

- Arkansas Western Gas Company ("AWG")—Public utility company that provided the hot water heaters and the heating, ventilation, and air conditioning ("HVAC") units and natural gas to Springdale Ridge.

According to the Fourth Amended Complaint, in April 2001, tenants began to move into the newly constructed Springdale Ridge Apartments under lease agreements entered into with Simpson. The facility was not completed until 2003. Springdale Ridge includes multiple buildings and has 192 separate units. The complaint alleges that the design for the HVAC and hot-water systems was flawed when the building was constructed, which resulted in dangerous levels of carbon monoxide in the individual apartment units. The complaint further alleges that many residents, including some of the class representatives, were alerted by in-home detectors to high levels of carbon monoxide in their units. These residents allegedly told management, AWG, the Springdale Fire Department, and others about the carbon-monoxide readings.

During 2002, according to the complaint, AWG tested some of these individual units upon notification and discovered varying levels of carbon monoxide. Some levels were elevated, and others were not. After testing, AWG either shut off the gas or returned service. On January 24, 2004, after reports to the Springdale Fire Department of elevated carbon-monoxide levels, AWG inspected apartment units and reported problems with the "make-up air supply." AWG, however, reactivated natural-gas service to Springdale Ridge.

On August 8, 2004, Melanie Cash reported that her carbon-monoxide alarm had

---

2. Walling is listed as a defendant in Subclasses A and C but has not joined the other Subclass A defendants in appealing the certification of that subclass. Walling also failed to file its own notice of appeal. Walling does respond to the plaintiffs' cross-appeal regarding the judge's decision not to certify Subclass C.

3. According to the circuit judge's findings of fact, plaintiffs allege that Atlas was the general contractor, but Atlas maintains that it was a subcontractor. A motion seeking a declaration on this point is pending in the circuit court.

sounded, and, in response, the Springdale Fire Department and the Springdale Building Inspector's Office tested each unit in her building for carbon monoxide.[4] Some of the tests revealed the presence of carbon monoxide.

On August 10, 2004, Michael Cline called the Springdale Police Department to respond to his carbon-monoxide-detector alarm. The police responders did some initial testing, which resulted in a decision by the police department, AWG, and Springdale Ridge management to conduct more extensive testing. The subsequent tests revealed that there were high levels of carbon monoxide in most of the units examined.[5] AWG then shut off the gas to all of the facilities at Springdale Ridge. The Springdale Building Inspector posted a "red tag" notice on each apartment, stating that the building was "unsafe."

On August 14, 2004, AWG reconnected gas to the Springdale Ridge facilities, but the HVAC units remained disconnected until December 12, 2004, while repairs were being made. Some residents apparently moved out of their apartments during the four months in which the HVAC units were inoperative, and others remained. Springdale Ridge took various steps to mitigate the inconvenience to the residents, which included providing meals while the gas was disconnected, working with a local church to provide showers and transportation, providing washers and dryers, and paying for hotel rooms. Springdale Ridge also did not charge any rent during the week that the gas was turned off.

The procedural history of this case is lengthy and complex. The named plaintiffs/appellees, representing a putative class, originally filed a class action against various defendants on September 2, 2004, alleging various causes of action. Many of the defendants filed cross-claims against each other, and the plaintiffs/appellees filed multiple amended complaints and motions for class certification. On June 30, 2006, the plaintiffs/appellees filed a Fourth Amended Complaint and Second Amended Motion for Class Certification, which are the pleadings that give rise to the instant appeal. In that complaint, Subclass A plaintiffs/appellees brought claims for breach of contract and fraud against Simpson, and Subclass C plaintiffs/appellees brought various tort claims against Simpson and the remaining defendants/cross-appellees.[6]

The circuit judge held a four-day certification hearing. On June 13, 2007, she issued Findings of Fact and Conclusions of Law, as required by Arkansas Rule of Civil Procedure 23. Some of the defendants filed a motion for reconsideration or, in the alternative, for additional findings of fact and conclusions of law. The circuit judge scheduled another hearing, and on September 5, 2007, she entered an order amending her findings of fact and conclusions of law and a class certification order, conditionally certifying Subclass A and denying certification for Subclass C.

---

4. Cash's alarm had gone off on more than one occasion before.

5. The complaint states that there were high levels of carbon monoxide in every apartment unit checked, except one. Simpson's brief says that "elevated levels of carbon monoxide were found in some apartments, but not others." The circuit judge found that elevated levels of carbon monoxide were discovered in "most of the apartments inspected."

6. Plaintiffs originally included other claims against some defendants as part of Subclass B, but they nonsuited Subclass B, and an order to that effect was entered on April 6, 2006.

The class-certification order defines Subclass A as "all current or former lessees of Springdale Ridge Apartments I and II located within Springdale, Washington County, Arkansas."[7] The order states that Subclass A "seeks claims for breach of implied covenant of good faith and fair dealing, breach of contractual obligation to maintain, repair, and inspect, failure of consideration, and fraud" against Simpson. According to the Fourth Amended Complaint, plaintiffs/appellees prayed for a refund of rental payments with respect to the breach-of-contract and fraud claims and punitive damages for the fraud claims. Subclass C, which was not certified, was defined as "all current or former residents, current or former tenants, or current or former occupants of Springdale Ridge Apartments I and II located within Springdale, Washington County, Arkansas." Subclass C brought claims for outrage, negligence, and strict liability against Simpson; negligence against AWG, the Architects, and the Builders; and wrongful death against all defendants. Subclass C also sought to have the Civil Justice Reform Act of 2003 declared unconstitutional and unenforceable. The prayer for relief in the Fourth Amended Complaint for the Subclass C tort claims was for a determination of liability only, independent of determinations relating to causation and damages.

## I. *Rule 23.*

In order to certify a class, the trial judge must find that the plaintiff has met the requirements of Arkansas Rule of Civil Procedure 23, which states:

(a) One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) An action may be maintained as a class action if the prerequisites of subsection (a) are satisfied, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. . . .

Thus, in applying Rule 23, this court has held that the following six factors must be met for a class to be certified: (1) numerosity; (2) commonality; (3) predominance; (4) typicality; (5) superiority; and (6) adequacy. *BPS, Inc. v. Richardson*, 341 Ark. 834, 841, 20 S.W.3d 403, 406 (2000). In the instant appeal, the appellants do not appeal the circuit judge's findings on numerosity or adequacy with respect to either subclass.

In reviewing a trial court's decision to grant or deny class certification, this court gives trial courts broad discretion and will reverse only when the appellant can demonstrate an abuse of discretion. *Id.* at 840, 20 S.W.3d at 405. When reviewing a circuit judge's class-certification order, this court reviews the evidence contained in the record to determine whether it supports the circuit judge's decision. *See, e.g., FirstPlus Home Loan Owner 1997–1 v. Bryant*, 372 Ark. 466, 470–71, 277 S.W.3d 576, 580 (2008) (citing

---

7. The circuit judge found that the class period for Subclass A should commence from the time the first rental of apartments on the project property began, April 2001, and cease on December 12, 2004.

*Asbury Auto. Group, Inc. v. Palasack*, 366 Ark. 601, 237 S.W.3d 462 (2006)). Neither this court nor the circuit court delves into the merits of the underlying claims at this stage, as the issue of whether to certify a class is not determined by whether the plaintiff has stated a cause of action for the proposed class that will prevail. *Id.* at 471, 277 S.W.3d at 580 (citing *Am. Abstract & Title Co. v. Rice*, 358 Ark. 1, 186 S.W.3d 705 (2004)).

## II. *Direct Appeal*

### A. Commonality

■ To certify a class, the circuit judge must determine that "there are questions of law or fact common to the class." Ark. R. Civ. P. 23(a)(2) (2009). This court has held that the commonality requirement is always case specific and that

> Rule 23(a)(2) does not require that all questions of law or fact raised in the litigation be common. The test or standard for meeting the rule 23(a)(2) prerequisite is . . . that there need be only a single issue common to all members of the class. . . . When the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected.

*Union Pac. R.R. v. Vickers*, 2009 Ark. 259, 308 S.W.3d 573, 578 (quoting Herbert B. Newberg, *Newberg on Class Actions* § 3.10 (3d ed.1993)). Furthermore, the circuit judge "must determine what elements in a cause of action are common questions for the purpose of certifying a class," and commonality is satisfied where "the defendant's acts, independent of any action by the class members, establishes a common question relating to the entire class." *Id.*, 308 S.W.3d. at 579 (quoting *Williamson v. Sanofi Winthrop Pharms.,*

Inc., 347 Ark. 89, 96–97, 60 S.W.3d 428, 432–33 (2001)).

For its first point on appeal, Simpson claims that the circuit judge abused her discretion in finding that the commonality requirement was satisfied as to Subclass A. We turn then to the circuit judge's specific finding on this point:

a. All of the apartments were constructed from the same basic building plans as it pertains to the mechanical closet where the heat, air conditioning, and hot water were produced for each apartment.

b. All of the apartments had the same flex duct system and the same return air system regardless of whether the apartment had two or three bedrooms.

c. All of the apartments had either the Rudd or Apollo HVAC system installed, which are both claimed to be defective.

d. Each member of the class alleges his/her personal, wrongful exposure to carbon monoxide was a result of a faulty design of the mechanical closet where the heating ventilation and air conditioning (HVAC) for each apartment was located.

e. On August 10, 2004, the Springdale City Inspector's Office placed a red tag on the door of each apartment stating the building was unsafe and its use or occupancy was prohibited by the Building Official of the Building Department of the City of Springdale, Arkansas under provisions of Ordinance No. 587.

f. All of the apartments had the natural gas shut off on August 10, 2004, pursuant to the Springdale City Inspector's order.

g. The natural gas remained disconnected, as stated above, at least until August 14, 2004.

h. Air conditioning and heating units were disabled from August 14, 2004 until December 12, 2004. During this period, the tenants were provided with concessions, rent discounts, and other necessary services.

The circuit judge concluded in paragraph 7 of her order: "[T]he commonality requirement has been satisfied with regard to Subclass A. The issue of evacuation of the buildings on August 10, 2004, is common to all members of Subclass A with respect to their claims for breach of contract and fraud."

Simpson alleges error in two ways on this point. First, it argues that each claim brought by Subclass A—breach of contract, failure of consideration, and fraud—would require ⌊11⌋the plaintiffs/appellees to "initially prove as a predicate that each apartment contained high concentrations of carbon monoxide." It is Simpson's assertion that this would require individual proof because it is not clear in the record that each apartment unit had elevated levels of carbon monoxide. Second, Simpson urges that the judge's finding that "the issue of evacuation of the buildings on August 10, 2004, is common to all members of Subclass A" is patently wrong because some of the putative class members did not reside at Springdale Ridge on August 10, 2004. We disagree with Simpson on both points.

The plaintiffs/appellees' complaint states that each apartment at Springdale Ridge included a defectively designed mechanical closet, which housed the hot-water heater and HVAC unit. The complaint further asserts that Simpson breached the lease agreements by failing to provide apartments free from carbon monoxide and by failing to notify the putative class members when they knew or should have known that there were elevated levels of the dangerous gas in the apartments. The plaintiffs/appellees' fraud claim rests on the same allegation that Simpson knew or should have known of the defective HVAC units and the carbon-monoxide levels but continued to lease apartments to the putative class members without disclosing the defect.

■ The putative class has clearly claimed that Simpson's actions in installing defective HVAC units, failing to repair the defects, and failing to notify prospective and current residents of the problem gave rise to their cause of action for breach of contract, failure of consideration, and fraud. The circuit judge then found that "[e]ach member of the class ⌊12⌋alleges his/her personal, wrongful exposure to carbon monoxide was a result of a faulty design of the mechanical closet where the heating ventilation and air conditioning unit (HVAC) for each apartment was located." The circuit judge's decision that there was commonality in the claims raised was not an abuse of discretion.

In addition to arguing that the record does not support a finding of commonality, Simpson contends that the circuit judge's finding that "the issue of evacuation of the buildings on August 10, 2004 is common to all members of Subclass A with respect to their claims for breach of contract and fraud" was factually erroneous and "inconsequential and irrelevant to the claims as alleged." Again, we disagree.

The judge's finding—"the issue of evacuation of the buildings on August 10, 2004, is common to all members of Subclass A"—can be harmonized with the circuit judge's specific findings in her order as set forth in this opinion. The allegedly faulty design and construction of the mechanical closets for each apartment, beginning in

2001, is the overarching basis for liability and led to the red-tagging of all apartments on August 10, 2004. By red-tagging every apartment as unsafe on August 10, 2004, every lessee and resident in the class, who lived in the apartments at some point between April 2001 and August 10, 2004, was affected. This is so even though some of those putative class members were not residents on August 10, 2004. In short, the circuit judge's conclusion regarding evacuation reasonably refers to the red-tagging date, which affected all apartment units involved in this lawsuit, and that red-tagging is some support for the common-liability claim that all units were defectively planned and built from 2001 forward.

### B. Typicality

██ Simpson also argues that the circuit judge abused her discretion in finding that the typicality requirement was met with respect to Subclass A. This court has long held that the typicality requirement is satisfied if the representative's claim arises from the same common wrong alleged against the members of the class. *See, e.g., FirstPlus,* 372 Ark. at 476, 277 S.W.3d at 584. We have often quoted with approval the following language from Newberg's *Treatise on Class Actions:*

> Thus, a plaintiff's claim is typical if it arises *from the same event or practice or course of conduct* that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met *irrespective of varying fact patterns which underlie individual claims.*

*Id.* (quoting 1 Herbert B. Newberg, *Newberg on Class Actions* § 3.13, at 166–67 (2d ed.1985)) (emphasis in FirstPlus). In determining whether the typicality requirement is met, this court focuses on the defendant's conduct and not on the injuries or damages suffered by the plaintiffs. *Id.* (citing *Direct Gen. Ins. Co. v. Lane,* 328 Ark. 476, 944 S.W.2d 528 (1997)).

The circuit judge made the following findings with respect to typicality:

a. Each class representative testified he/she was/is typical of other tenants in that they occupied a 2 or 3 bedroom unit at the Springdale Ridge Apartments, equipped with a hydronic heat system housed in a single closet, and claim that this system was defectively designed.

b. On August 10, 2004, the Springdale City Inspector's Office placed a red tag on the door of each apartment stating the building was unsafe and its use or occupancy was prohibited by the Building Official of the Building Department of the City of Springdale, Arkansas under provisions of Ordinance No. 587.

c. All of the apartments had the natural gas shut off on August 10, 2004, pursuant to the Springdale City Inspector's order.

d. The natural gas remained disconnected, as stated above, at least until August 14, 2004.

e. Air conditioning and heating units were disabled from August 14, 2004 until December 12, 2004. During this period, the tenants were provided with concessions, rent discounts, and other necessary services.

f. Five of the seven class representatives were tenants of Springdale Ridge Apartments on August 10, 2004, when the apartments were ordered to be evacuated by the City of Springdale.

Simpson essentially claims that the circuit judge abused her discretion in finding typicality because (1) the class representatives do not possess the same interest and have not suffered the same injury as the class members, and (2) the judge based her finding of typicality on the erroneous finding that "[t]he claims of Subclass A and its representatives arise from the same wrong, more specifically mass evacuation of the apartment units, repair to the units, and loss of use by the class members alleged against the named Defendants."

■ The circuit judge relied on testimony of the putative class representatives that their claims were typical of the class and found that to be the case, as already stated. This finding supports her conclusion that the typicality requirement has been satisfied with regard to Subclass A. *See FirstPlus*, 372 Ark. at 476, 277 S.W.3d at 584 (quoting 1 Herbert B. Newberg, *Newberg on Class Actions* § 3.13, at 166–67 (2d ed.1985)). Moreover, we reject again the argument that the circuit judge tied her finding of common liability and typicality solely to a mass "evacuation" of all residents on August 10, 2004, for the reasons already stated in this opinion. We affirm on this point.

## C. Predominance

■ Rule 23(b) provides that common questions of law and fact must predominate over any questions affecting only individual members. *See, e.g., Johnson's Sales Co. v. Harris*, 370 Ark. 387, 392, 260 S.W.3d 273, 277 (2007). We have already established that a common wrong has been alleged against the defendants. The predominance requirement, however, is more stringent than commonality. *See Vickers*, 2009 Ark. 259, 308 S.W.3d at 578 (citing *BPS, Inc. v. Richardson*, 341 Ark. 834, 20 S.W.3d 403 (2000)).

In *Vickers*, this court recently summarized the standard for testing predominance:

When deciding whether common questions predominate over other questions affecting only individual members, this court does not merely compare the number of individual versus common claims. Rather, this court decides if the preliminary, overarching issues common to all class members "predominate over" the individual issues, which can be resolved during the decertified stage of a bifurcated proceeding. Thus, the mere fact that individual issues and defenses may be raised regarding the recovery of individual members cannot defeat class certification where there are common questions concerning the defendant's alleged wrongdoing that must be resolved for all class members.

*Id.* (internal citations omitted).

This court has further said that if a case involves preliminary issues common to all class members, predominance is satisfied even if the court must subsequently decertify a class due to individualized damages. *See, e.g., Farmers Ins. Co. v. Snowden*, 366 Ark. 138, 148, 233 S.W.3d 664, 670 (2006). However, if the preliminary issues are sufficiently individualized, then predominance is not satisfied and class certification is improper. *Id.*, 233 S.W.3d at 671.

The circuit judge reiterated many of her commonality findings in her analysis of predominance for Subclass A. She then concluded that "the predominance requirement has been satisfied with regard to Subclass A. The issue of breach of contract is common to all of Subclass A and predominates over any individual claims of the class members."[8]

8. While the circuit judge does not specifically

reference the fraudulent-concealment claim

Simpson urges that "the heart of the Plaintiffs' claims here is exposure" and the plaintiffs' "foundational claims of pervasive 'unhealthy and hazardous' carbon monoxide raise a host of individual issues." Simpson specifically maintains that the following individual issues, in addition to others, predominate over any common issues: (1) the amount, if any, of carbon monoxide in each apartment unit; (2) the duration of any exposure to carbon monoxide, which could be affected by lifestyle choices; (3) each class member's medical history; (4) whether any class member used the mechanical closet for storage; and (5) whether Simpson is entitled to any set-offs for "skipped rent" or for other amenities provided to an individual class member.

Simpson next cites this court to various federal court cases for the proposition that common issues cannot predominate over individual issues where "no single proximate cause applies equally to each class member" and where "affirmative defenses depend on facts peculiar to each plaintiff's case." *See, e.g., Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 627 (3d Cir.1996), *aff'd*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Simpson, citing *Amerinet v. Xerox Corp.*, 972 F.2d 1483, 1494, (8th Cir.1992), further asserts that "where the individualized issues determine whether a class member is entitled to any compensation at all, certification is not appropriate." This federal authority, however, is not controlling on this court. Moreover, the federal courts apply a rigorous-analysis test for class actions, which this court has consistently rejected. *See, e.g., Teris, LLC v. Chandler*, 375 Ark. 70, 83, 289 S.W.3d 63, 73 (2008).

Our case law has held that "the mere fact that individual issues and defenses may be raised by the defendant *regarding the recovery of individual class members* cannot defeat class certification where there are common questions concerning the defendant's alleged wrongdoing that must be resolved for all class members." *See, e.g., Gen. Motors Corp. v. Bryant*, 374 Ark. 38, 49, 285 S.W.3d 634, 643 (2008) (citing *FirstPlus*, 372 Ark. 466, 277 S.W.3d 576) (emphasis added).

In *General Motors Corp. v. Bryant*, the class representative brought suit against GMC on behalf of a nationwide class, alleging that approximately four million pickup trucks and sport-utility vehicles were sold with defectively designed parking brakes. Bryant further alleged that GMC discovered the defect but failed to disclose it for over two years in order to avoid paying warranty claims. After the circuit court granted class certification, GMC appealed to this court, arguing, among other things, that individual fact issues precluded a finding that common issues of law and fact predominated. GMC specifically argued that whether the class members' brakes were actually defective was an individual issue that prevented predominance over any common questions. GMC also contended that it may be entitled to various defenses against individual class members. Simpson makes similar arguments in the instant appeal.

This court affirmed the circuit judge and held that "the common issue that predominates here over any other potential issue is whether the parking-brake system installed in the class members' vehicles was defective and whether General Motors attempted to conceal any alleged defect." *Id.* at 49, 285 S.W.3d at 642. The court noted that challenges based on statutes of limitation, fraudulent concealment, releas-

---

in her predominance findings, the underlying facts related to that claim and breach of contract due to failure to notify of hazardous-gas conditions are the same. For both causes of action, a refund of rents paid is sought by the plaintiffs/appellees.

es, causation, or reliance are usually rejected and do not bar a finding of predominance because those issues go to the right of a class member to recover, not the underlying issues of the defendant's liability. *Id.* at 49, 285 S.W.3d at 643; *see also, SEECO, Inc. v. Hales,* 330 Ark. 402, 954 S.W.2d 234 (1997) (quoting 1 Herbert B. Newberg, *Newberg on Class Actions* § 4.26, at 4–104 (3d ed.1992)).

█ In the case at hand, as in *Bryant,* the individual issues raised by Simpson will go to the right of any individual class member to recover, but the common questions of whether the installed HVAC units were defective and whether Simpson knew of and should have disclosed the defect pertain to the whole class and can be decided before reaching any individual issues. Those issues clearly predominate, and the circuit judge did not abuse her discretion in finding that predominance was satisfied.

## D. Superiority

Simpson next contends that the circuit judge abused her discretion in finding that a class action was superior to any other method for adjudicating the claims of Subclass A because it is unfair to the defendants. Simpson specifically asserts that "[t]he class representatives should not be permitted to put on generalized proof and then ask the court to *assume* or blindly *conclude* that all other claims are similar." Simpson also maintains that if the case proceeds as a class action, it will be "deprived of the opportunity to raise the individualized defenses that exist with respect to each class member and/or the right to receive a verdict on the individualized facts of each class member's claims."

█ This court has repeatedly held that the superiority requirement is satisfied if class certification is the more efficient way of handling the case and it is fair

to both sides. *See, e.g., Bryant,* 374 Ark. at 50, 285 S.W.3d at 643. When determining whether a class action is the superior method of adjudication, it may be necessary for the circuit judge to evaluate the manageability of the class. *Id.* The avoidance of multiple suits lies at the heart of any class-action decision. *Id.* Furthermore, where a cohesive and manageable class exists, we have often held that "real efficiency can be had if common, predominating questions of law or fact are first decided, with cases then splintering for a trial on individual issues, if necessary." *Snowden,* 366 Ark. at 150, 233 S.W.3d at 672. As a final point, we have said that this is especially so

> when it is possible that a large number of persons who *may* have legitimate claims not worth pursuing because of the cost of our system of justice may lose those claims if they are not allowed to proceed together as a class. By not certifying a class, a trial court can cause the problem to "go away" to the extreme disadvantage of the claimants unless that decision is reviewable.

*Id.* at 151, 233 S.W.3d at 672 (quoting *Ark. Blue Cross & Blue Shield v. Hicks,* 349 Ark. 269, 289, 78 S.W.3d 58, 70 (2002)) (emphasis in *Snowden* ).

In this case, the circuit judge found as follows:

> 29. The Court finds that class certification is the most efficient way of handling this case for Subclass A because the large number of small claims would require numerous individual trials which would be repetitive and could lead to inconsistent results.

> 30. The court finds a class action for Subclass A will allow economically disadvantaged individuals to pursue a claim they would otherwise be unable to bring against the Defendants.

■ The circuit judge's findings are based on the most efficient and manageable way to handle these multiple claims. Simpson challenges these findings, but its argument on this point is contrary to this court's case law. As already noted, we have held many times that a class action is the superior way to handle numerous claims where common, preliminary issues can first be decided, with the case then splintering, if necessary, for the trial of individualized issues, like defenses and damages. *See, e.g., BPS*, 341 Ark. at 847, 20 S.W.3d at 410. The circuit judge did not abuse her discretion in finding that a class action was the superior method for adjudicating the claims of Subclass A.

### E. Miscellaneous Arguments

#### 1. *Failure of Consideration*

Simpson argues that failure of consideration is not a viable class claim because each class member will be required to show that there was a complete failure of consideration in order to recover total restitution of the rent paid. The plaintiffs/appellees rightly note that this argument prematurely asks this court to delve into the merits of the underlying claims, which this court has repeatedly refused to do. *See, e.g., Vickers*, 2009 Ark. 259, 308 S.W.3d at 579 (totally immaterial whether the petition will succeed on the merits or even if it states a cause of action).

#### 2. *Arkansas Tort Reform Act*

Simpson next claims that the circuit judge abused her discretion in failing to address the effect of the Arkansas Tort Reform Act because it went into effect on March 25, 2003, which was during the alleged class period. Thus, Simpson contends that the fact that the act will apply to some class members and not to others defeats certification.

■ This argument must fail, as Simpson has failed to cite this court to where it made this specific argument to the circuit judge. Simpson, instead, directs this court to a hearing before the circuit judge during which the parties presented arguments about the Arkansas Tort Reform Act. That hearing, however, centered on the plaintiffs/appellees' motion to have the act declared unconstitutional and not on whether the fact that it was enacted during the class period defeats any of the Rule 23 requirements. Furthermore, Simpson failed to obtain a final ruling from the circuit judge on this issue. It is well settled that this court will not address an argument on appeal if it has not been argued before the circuit judge or if a party fails to obtain a ruling from that judge. *See, e.g., Johnson v. Cincinnati Ins. Co.*, 375 Ark. 164, 289 S.W.3d 407 (2008).

#### 3. *Mass–Accident Case*

Simpson further maintains that the circuit judge abused her discretion because she treated this toxic-tort case as a mass-accident case. Again, Simpson is in error. The critical issue in our review is whether the circuit judge abused her discretion in finding that the requirements of Rule 23 were met in this particular case and not whether the case was wrongly categorized. This case, moreover, is distinguishable from the toxic-tort cases cited by Simpson.

Simpson cites this court first to our opinion in *Baker v. Wyeth–Ayerst Laboratories Division*, a case in which this court affirmed the circuit court's denial of a motion to certify a class action. 338 Ark. 242, 992 S.W.2d 797 (1999). The plaintiffs in *Baker* sued multiple defendants for injuries allegedly sustained as a result of taking various diet drugs. The plaintiffs brought suit for negligence, products liability, failure to warn, and breach of express

and implied warranties. The circuit judge declined to certify the class because he found that individual issues precluded a finding that common questions predominated. This court affirmed, holding that "this case presents numerous individual issues that go to the heart of the defendants' conduct, causation, injury, and damages such that the defendants' liability as to each plaintiff will have to be resolved on a case-by-case basis." *Id.* at 249, 992 S.W.2d at 801. We further noted that the amount or combination of diet drugs a plaintiff took, combined with her personal medical history, might make the drugs dangerous for one party and not for another.

Simpson cites, in addition, *Arthur v. Zearley* for the proposition that toxic-tort cases, as opposed to mass-accident cases, are not well suited to class treatment. 320 Ark. 273, 895 S.W.2d 928 (1995). In *Arthur*, the plaintiffs sought to certify a class action against various defendants for multiple tort claims, which centered on the allegedly improper surgical implantation of a product known as "Orthoblock" into the plaintiffs' spines. The circuit court certified the class, and this court reversed. We held that the issue of informed consent with respect to class members was foundational and could not be tried on a class basis. *Id.* at 283, 895 S.W.2d at 933. We further held that each plaintiff's unique medical history and condition, diagnosis, and treatment plan were individualized questions that predominated over common questions of liability. *Id.* at 286, 895 S.W.2d at 935.

In the instant case, if the HVAC units and the storage closets where they were housed were defectively designed and constructed, and Simpson knew or should have known of the defect and failed to advise tenants, Simpson may be found liable. That is the same fundamental, overarching issue of liability common to all putative class members. The other individualized issues go to damages, which can be determined in a bifurcated proceeding. That is a categorically different situation from the two medical cases relied on by the defendants.

### 4. *Causation and Damages*

Simpson contends that the circuit judge abused her discretion in certifying Subclass A for all purposes instead of certifying only on the question of liability. Simpson, however, cites no authority for this argument. This court has long held that it will not address arguments if they are insufficiently developed and lack citation to authority. *See, e.g., Gatzke v. Weiss,* 375 Ark. 207, 215, 289 S.W.3d 455, 461 (2008). Second, Simpson does not direct this court to any place in the record where it made this argument below. As already noted, this court will not address an argument made for the first time on appeal. *See Johnson,* 375 Ark. 164, 289 S.W.3d 407. This argument is not preserved for our review.

### 5. *Class Period*

Simpson urges that the circuit judge abused her discretion in defining the class period. The argument, however, was not raised by Simpson in its original brief before this court. Rather, it was raised for the first time in its reply brief. Therefore, the issue is not properly before this court, and it will not be addressed. *See, e.g., Coleman v. Regions Bank,* 364 Ark. 59, 64, 216 S.W.3d 569, 573 (2005).

### II. *Cross–Appeal*

#### A. Motion to Dismiss Cross–Appeal

Each of the cross-appellees, other than Simpson, has filed or joined a motion to dismiss the cross-appeal:

- May 30, 2008—Motion of Defendant–Appellee A.R. Mays Construction Co., f/k/a Devcon Enterprises, Inc., a/k/a Devcon by A.R. Mays Construction to dismiss designated "cross-appeal" of Plaintiffs–Appellants.
- June 16, 2008—Motion of Defendant–Appellee Atlas Construction of Arkansas, LLC, to dismiss designated "cross-appeal" of Plaintiffs–Appellants and Brief in Support.
- June 18, 2008—Motion of Defendant–Appellee Arkansas Western Gas's motion to join motion of Defendant–Appellee A.R. Mays Construction Company, f/k/a Devcon Enterprises, Inc., a/k/a Devcon by A.R. Mays Construction to dismiss designated "cross-appeal" of Plaintiffs–Appellants.
- June 20, 2008—Motion by L & L Plumbing and Heating, Inc., to adopt the motion to dismiss the cross-appeal filed by A.R. Mays Construction, Inc., and Atlas Construction of Arkansas, LLC.
- June 23, 2008—Motion of Defendant–Appellee Architecture Design & Development and Thomas O'Neill to dismiss designated "cross-appeal" of Plaintiffs–Appellants.

The movants ask this court to dismiss the cross-appeal because it should have been filed as a direct appeal rather than as a cross-appeal and, therefore, was untimely according to our rules of appellate procedure. Arkansas Rule of Appellate Procedure–Civil 4(a) requires a notice of appeal to be filed within thirty days of entry of the judgment, decree, or order. The rule also states that a cross-appeal must be filed within ten days of receipt of the notice of appeal. Ark. R.App. P.-Civ. 4(a) (2009). The circuit judge entered an order granting certification to Subclass A (to which the Simpson appellants were the only defendants) and denying certification to Subclass C (to which Simpson and the movants were defendants) on September 5, 2007. Simpson filed a notice of appeal on October 3, 2007, and the plaintiffs/appellees filed a notice of cross-appeal on October 12, 2007. If the plaintiffs/appellees/cross-appellants' challenge to the circuit judge's refusal to certify Subclass C was a proper cross-appeal, it was timely under Rule 4(a). However, if it should have been filed as a direct appeal, the notice of appeal was untimely.

The movants rely on *Johnson v. Carpenter* for the proposition that where the matter sought to be appealed is separate from that which has been appealed in a timely manner, it should be the subject of an original appeal, and it may not be made timely by its denomination as a cross-appeal. 290 Ark. 255, 260, 718 S.W.2d 434, 437 (1986). The movants contend that the class members, their claims, their theories of recovery, and the defendants involved in Subclass C are all separate and distinct from those involved in Subclass A. The plaintiffs respond that each putative-class claim arises from the same underlying facts.

This case is distinguishable from *Johnson* because in that case two cases were filed (one in probate court and another in circuit court) against different defendants and were consolidated into one case before the circuit court. While one order disposed of both cases, this court held that a cross-appeal was inappropriate because they were completely separate cases in different jurisdictions. In the instant case, the plaintiffs/appellees/cross-appellants filed one complaint in one jurisdiction in which they alleged, albeit by way of two subclasses, various theories of recovery against multiple defendants. We conclude that this is a critical distinguishing factor from the *Johnson* case. The motions to dismiss are denied.

B. Class Certification for Subclass C

 The circuit judge found, based on the same findings and conclusions discussed earlier with respect to Subclass A, that all of the Rule 23(a) requirements were satisfied for Subclass C.[9] She found, however, that the Rule 23(b) criteria of predominance and superiority were not satisfied due to the tort claims brought. We agree.

### 1. *Predominance*

With respect to Subclass C, the circuit judge made similar findings regarding predominance that were made for Subclass A. She specifically found that the apartments were red-tagged, the gas was disconnected from August 10 to August 14, air conditioning and heating units were disabled until December 12, and the apartments were constructed from the same basic building plans. The judge added these findings with respect to exposure:

g. Each member of the class claims their respective exposure to carbon monoxide was a result of a faulty design of the mechanical closet where the heating ventilation and air conditioning (HVAC) for each apartment was located.

h. There are cross-claims between certain defendants that must be adjudicated. These must be fully adjudicated in order to determine the liability, causation, and damages as they relate to the class members.

i. [sic] Simpson Solutions, Simpson Partnership, Deer Run, Fox Run, Affordable, Pinnacle, and Hardcastle have filed cross-claims against all other defendants.

a. AWG has filed a cross-claim against all other defendants; and

b. L & L has filed a cross-claim against all other defendants.

i. The alleged common questions of "design defect" does not address every alleged exposure. Some Defendants allege that some of the alleged wrongful exposure may have been caused by operations, maintenance, tenant behavior, or using the HVAC closets for storage.

j. The alleged wrongful exposure happened at different times and/or different levels with regard to individual class members.

k. Defendants claim damages are diverse among class members. Class members' lifestyles affected their exposure such as whether or not they smoke, their past medical histories, what appliances they used and how often, and how much they used the HVAC units.

The judge also found that "[t]he tort of outrage is intensely individualized and is not easily determined by a class action suit. While it is possible to bring outrage as a class action, the court finds that in this case, with this many defendants, the elements of outrage are highly individual and predominate over any common claim of Subclass C." With respect to the other tort claims, the judge held that "[t]he common issues to Subclass C such as whether there was exposure do not predominate over the issues of proximate cause, comparative fault, notice, maintenance, and damages of individual class members."

The cross-appellants urge that the circuit judge erred in finding that the predo-

---

9. The circuit judge specifically found that the criteria of numerosity, commonality, typicality, and adequacy were met for Subclass C.

minance requirement was not met with respect to Subclass C. They specifically assert that "the trial court applied the wrong test when deciding that Subclass C failed the Rule 23 test as to predominance" and contend that a recent decision by this court has changed the standard for testing predominance. *See Johnson's Sales Co. v. Harris*, 370 Ark. 387, 260 S.W.3d 273 (2007). Cross-appellants contend that *Johnson's Sales* changed the law cited by the circuit judge, which was (1) that common claims must predominate over any questions only affecting individual members of the class, citing *Mega Life & Ins. Co. v. Jacola*, 330 Ark. 261, 954 S.W.2d 898 (1997); and (2) if the common issues predominate over individual claims, the trial court may certify the class to try common issues first, and then bifurcate the trial under Rule 23(d) to resolve individual issues, citing *Fraley v. Williams Ford Tractor and Equip.*, 339 Ark. 322, 5 S.W.3d 423 (1999).

For their contention that the predominance analysis has changed, the cross-appellants rely on the following language in *Johnson's Sales:* "If a case involves preliminary, common issues of liability and wrongdoing that affect all class members, the predominance requirement is satisfied even if the circuit court must subsequently determine individual damages issues in bifurcated proceedings." 370 Ark. 387, 392, 260 S.W.3d 273, 277. They further cite another case for the well-settled proposition that the initial analysis is whether there is a common preliminary issue with the potential to wipe out the possibility of a claim for every class member. *See Snowden*, 366 Ark. 138, 233 S.W.3d 664. This language, say the cross-appellants, taken together, means that when a circuit court determines that there are common issues of liability affecting all class members, the predominance requirement is automatically satisfied. We disagree.

We initially observe that the cross-appellants' interpretation of the *Johnson's Sales* opinion is wrong. This court did not change the standard for determining predominance in *Johnson's Sales* and certainly did not hold that where the judge finds common questions of liability, which apply to all class members, predominance is automatically satisfied. In point of fact, the paragraph in *Johnson's Sales*, which includes the language relied on by the cross-appellants, reads in its entirety as follows:

Rule 23(b) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members[.]" This court has explained that the starting point in examining the predominance issue is whether a common wrong has been alleged against the defendant. If a case involves preliminary, common issues of liability and wrongdoing that affect all class members, the predominance requirement of Rule 23 is satisfied even if the circuit court must subsequently determine individual damages issues in bifurcated proceedings. Moreover, this court has recognized that a bifurcated process of certifying a class to resolve preliminary, common issues and then decertifying the class to resolve individual issues, such as damages, is consistent with Rule 23. Moreover, this court has repeatedly stated:

> [t]he predominance element can be satisfied if the preliminary, common issues may be resolved before any individual issues. In making this determination, we do not merely compare the number of individual versus common claims. Instead, we must decide *if the issues common to all plaintiffs "predominate over" the individual issues*, which can be resolved

during the decertified stage of bifurcated proceedings.

370 Ark. at 392, 260 S.W.3d at 277 (internal citations omitted) (emphasis added).

Hence, it is clear that this court has not changed its predominance requirements and that the standard is the same as that cited by the circuit judge. To repeat, the circuit judge must first decide that there are issues of liability common to the class and then determine whether those common issues predominate over individual questions. In the instant case, the circuit judge specifically found that individual issues predominated over any common questions of liability for Subclass C. The *Johnson's Sales* case is in agreement with this finding.

Further, as the cross-appellees rightly note, proximate cause cannot be decided at a subsequent proceeding after "liability" has been determined for all Subclass C members because causation is a foundational element for determining liability in negligence claims. *See, e.g., Jones v. McGraw*, 374 Ark. 483, 486, 288 S.W.3d 623, 625–26 (2008) (the circuit judge erred in permitting the defendant to introduce proximate-cause evidence at a hearing on damages because proximate causation is an element of liability for medical malpractice, not an element of damages); *Collier v. Citizens Coach Co.*, 231 Ark. 489, 330 S.W.2d 74 (1959) (negligence must proximately cause a given result in order to justify a finding of negligence); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 41 (5th ed. 1984) ("An essential element of the plaintiff's cause of action for negligence, or for that matter for any other tort, is that there be some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered. This connection usually is dealt with by the courts in terms of what is called 'proximate cause,' or 'legal cause.' ").

The critical distinction between Subclass A and Subclass C is that proximate causation is a foundational element of the torts of strict liability, negligence, wrongful death, and outrage. Therefore, the plaintiffs cannot establish the defendants' liability without addressing the individualized issues of proximate causation, which involve the extent of exposure to carbon monoxide and how that exposure caused damage to the putative-class members. In Subclass A, the issues of Simpson's liability for breach of contract due to defectively designed apartment units and for fraudulent concealment in not revealing the defect to renters can be resolved at a preliminary stage. Furthermore, the damages prayed for by putative-class members were for the rental payments that had been made. Thus, the Subclass A claims do not involve the individual variances associated with personal exposure to carbon monoxide, including class members' lifestyles and medical histories, and the resulting injuries to putative-class members caused by the alleged negligence of the defendants/appellants/cross-appellees. In this respect, the Subclass C claims are more akin to those made in *Baker*, where we affirmed the denial of class certification. We affirm on this point.

2. *Superiority*

The circuit judge's order found

that the superiority requirement is not satisfied in this case with respect to Subclass C. The number and the nature of the individual inquiries that would be required of the class will make a class action inefficient and difficult to manage.

This case involves issues of defect, unreasonable danger, duty, breach of duty, comparative fault, modification of equipment, proximate cause, statute of

limitations, contribution indemnity, vicarious liability, and damages.

There exist viable alternatives to class litigation in this case with respect to Subclass C that are superior alternatives. Arkansas Rule of Civil Procedure 20 permits cases that assert a common question of law or fact to be joined permissively, without a showing of predominance. Separately filed actions can be consolidated for trial if they are sufficiently similar. Ark. R. Civ. P. 42(a).

The cross-appellants maintain that the circuit judge erred because she erroneously found that proximate cause and degree of exposure would be involved in the class action. As already discussed, this argument must fail because, in the context of the tort claims brought by Subclass C, proximate cause and damages are foundational elements in determining liability. The cross-appellants also urge that the circuit judge erred in finding that there are superior alternative methods to class certification because the alternatives do not require a showing of predominance. Cross-appellants, in connection with this argument, maintain that the circuit judge erred in finding that a decision on liability, apart from causation and damages, is not a predominating issue. However, this court has already concluded that the circuit judge did not abuse her discretion in concluding that individual issues do predominate in the claims of Subclass C.

This court defers to the circuit judge with respect to a decision of whether a class action is the superior method for resolving multiple claims because the judge must take into consideration, among other things, whether she believes she can effectively manage the class. *See Bryant,* 374 Ark. at 50, 285 S.W.3d at 643. Here, the judge held that certifying Subclass C would result in unmanageable litigation.

We find no abuse of discretion on this point, and we affirm.

Affirmed on direct appeal and cross-appeal; motions to dismiss cross-appeal denied.